STANDARD LIFE & ACCIDENT INSURANCE COMPANY *v.* SCHMALTZ.

Opinion delivered October 7, 1899.

1. INSURANCE—ACCIDENTAL KILLING—EVIDENCE.—In an action against an accident company to recover for the accidental killing of plaintiff's husband, the proof was that deceased was a railroad machinist, and that one of his duties was to remove cylinder heads of engines. He was a strong man, and had frequently removed cylinder heads without injury. On the occasion when his fatal injuries were received, the cylinder head stuck, and he picked up a steel bar and removed it, and as he did so he dropped the bar and caught the cylinder head to prevent its falling. He was immediately taken sick. His stomach filled with blood, of which he vomited great quantities. He groaned; his face became deadly pale, and assumed a blanched, anxious expression, indicating great pain. He continued to vomit blood at intervals until he died. His physician testified that his death was caused by the rupture of a blood vessel in his stomach. *Held*, that there was evidence to sustain a finding of the jury that his death was accidental. (Page 593.)

2. ACCIDENT INSURANCE—RISKS CONTEMPLATED BY PARTIES—Although a policy of accident insurance stipulates that it does not cover injuries from "lifting," the insured will nevertheless be liable for an accidental injury so received by insured while engaged in the customary duties of his employment, where the application for insurance notified the insurer of the nature of his occupation. (Page 596.)

3. PROOF OF DEATH—WAIVER.—Evidence that an accident company knew that the beneficiary in a policy expected to collect the policy and relied upon it to furnish the customary blanks for proof of death by accident, and wilfully encouraged her to rely upon it to furnish such blanks until the time for making the proof had expired, and failed to furnish any, is sufficient to support a finding that the company had waived the proof. (Page 597.)

4. EVIDENCE—PREJUDICIAL ERROR.—Evidence tending to prove an undisputed fact in the case cannot be prejudicial, however incompetent. (Page 600.)

5. SAME—INVITED ERROR.—Where appellant, on the cross-examination of a witness, elicited testimony relating to the probability as to the mode in which deceased received injuries, it cannot complain if on re-examination appellee elicited testimony relating to the same subject. (Page 600.)

Appeal from Miller Circuit Court.

JOEL D. CONWAY, Judge.

*H. C. Hynson* and *Scott & Jones*, for appellant.

The death of the insured, though perhaps accidental, was not from "accidental cause." The means or *cause* of his death was not accidental, though the result may have been unforeseen or accidental. 76 N. W. 683; 127 U. S. 661; 75 Wis. 116; 47 N. Y. 52; 144 Mass. 572; 44 Pac. 996; 1 Am. & Eng. Enc. Law, 331; 112 N..Y. 422; S. C. 8 Am. St. Rep. 763; 80 Mo. 251; 28 S. W. 877; 3 N. E. 818; 1 Am. & Eng. Enc. Law, 291; 23 Fed. 712; 131 U. S. 100; 3 Joyce, Ins. § 2863; 30 S. W. 879; 70 N. W. 460; 154 Mass. 77; 44 Pac. 996; 60 Ark. 381; 22 S. E. 976. This case is covered by the stipulation, in the policy, against liability for injuries from "overexertion, wrestling, *lifting*," etc. 22 S. E. 796. There was no waiver by appellant of the proof of death within sixty days. 44 S. W. 464; 64 Neb. 590; 11 Mo. 278; 43 N. H. 621. The statements made by deceased to his physician the day after the injury were not part of the *res gestae.* 51 Ark. 509; 73 Fed. 774.

*Williams & Arnold*, for appellee.

The jury, upon all the evidence, were entitled to say whether the cause of decedent's death was accidental. An injury is from "accidental cause" if it is produced by means which were neither designed nor calculated to cause it. 131 U. S. 60; 29 C. C. A. 223; S. C. 85 · Fed. 401; 12 U. S. App. 381, 386, 387, 389; 5 C. C. A. 347, 350, 351, 353; 55 Fed. 949, 952, 953, 955; 1 Fost. & F. (Eng. N. P.), 505; 69 Pa. 43 (1893); 1 Q. B. 750; 24 C. C. A. 309; S. C. 78 Fed. 754. The jury may infer an accident from other facts in proof. 24 C. C. A. 654; 79 Fed. 423. The "lifting" which caused decedent's death was an ordinary incident of his employment, and was contemplated by the parties when he was insured as a machinist. 57 N. W. 186; 63 N. W. 593; 1 Am. & Eng. Enc. Law (2 Ed.), 310, 311, 319; 95 U. S. 673–9; 65 Mo. 328; 65 Ark. 61; 52 Ark. 11. The testimony of decedent's physician as to his statements was admissible. The statements were *res gestæ.* 40 S. W. 909; 2 Cinn. Sup. Ct. Rep. 98; S. C. 4 Big. Life & Acc. Ins. Rep. 366; 46 Barb. 369; 11 Allen, 324. Not only was the jury justified in finding that

there was a waiver of further proof of death, but the information furnished substantially complied with the requirements of the policy.    52 N. W. 582; 52 Ark. 11.

BATTLE, J.    Catherine Schmaltz sued the Standard Life & Accident Insurance Company for the sum of two thousand dollars, upon a policy of insurance against accidents, which was executed by the defendant to her husband, E. Schmaltz, in his lifetime.    She alleged in her complaint that the defendant insured her husband, for her benefit, against the loss of life resulting from bodily injuries caused solely by external, violent and accidental means; and that, on the third day of April, 1897, her husband, while engaged in the performance of the duties incident and pertaining to his employment and occupation as a machinist, in an effort to remove the cylinder head of an engine he was repairing and to prevent the same from falling, violently, unexpectedly and accidentally, and by external means wrenched his body in such a manner as to rupture one of the blood vessels of his stomach, and thereby caused his death; and that, immediately after his death, "she gave notice thereof, and within the time prescribed by said policy made out and forwarded to said insurance company proofs of his death, and that she had in all other respects complied with the provisions and requirements of said policy."

The defense to the action was as follows:    The deceased did not suffer death from injuries by external, violent, and accidental means, the policy having specially exempted the defendant from liability for all injuries which resulted from lifting or over-exertion, and he came to his death by those means; and the proof of death had not been furnished as required by the policy.

The issues of fact were tried by a jury, and they returned a verdict in favor of the plaintiff for $2,000, the amount of the policy, and the court rendered a judgment in her favor for that amount against the defendant; and it appealed.

First.    The appellant contends that the verdict was not sustained by sufficient evidence.    The undisputed facts are: (1) The appellant insured E. Schmaltz for the benefit of appellee, his wife, in the sum of $2,000 against loss of life re-

sulting from bodily injuries caused solely by external, violent and accidental means, and agreed to pay that amount to her in the event of death caused by such means. And (2) the insured died within the term of his insurance from a sudden and unexpected rupture of one or more blood vessels in the stomach. But appellant insists that the death was not caused by external, violent and accidental means. Upon this point the trial court instructed the jury as follows:

"1. If you find from the evidence that E. Schmaltz came to his death by violent, external and accidental means in removing the cylinder head of an engine, and if you further find that the removal or lifting of said cylinder was in the line of his occupation and duty as a machinist, and that he incurred no more risk or danger in removing or lifting said cylinder head than was customary among reasonably prudent machinists in the performance of like duties, then you are instructed that the removal of said cylinder head was not within the exceptions of the policy.

"2. A person may do certain acts, the result of which may produce unforeseen consequences, and may produce what is commonly called accidental death, although the means are exactly what the man intended to use and did use, and was prepared to use. In such case the means would not be accidental, although the result might be accidental. In this case you are told that the plaintiff must prove by a preponderance of the evidence that the injury to the deceased was caused by external, violent and accidental means, and it is not sufficient that she prove that the result of the means employed by deceased was unforseen, unexpected and accidental.

"3. If the jury find from the evidence that, in the removing of the cylinder head from the engine, and carrying it off and putting it down, deceased acted in the manner he intended to act, and used the means he intended to use in the manner he intended to use them, and in so doing a blood vessel was ruptured, then you are told that the injury was not the result of accidental means, and plaintiff cannot recover.

"4. The jury are instructed that if they find from the evidence that deceased was removing a cylinder head from an engine, and in so doing he used the ordinary and usual means

employed under the circumstances then existing, and without the occurrence of any unforeseen, accidental or involuntary movement of the body in removing said cylinder head, a blood vessel was ruptured in the body of deceased, then the cause of the injury was not accidental, and you are instructed that the burden of proof is on the plaintiff to show by a preponderance of the evidence that (there) was such an unforeseen and accidental or involuntary movement of the body, and that this caused the rupture of the blood vessel."

As the correctness of these instructions is not questioned by either party, we make no comment upon them.

The evidence adduced in the trial tended to prove, substantially, the following facts: E. Schmaltz, at the time he was injured, was a strong, healthy, active, muscular man, weighing from one hundred and seventy to one hundred and seventy-five pounds. He had occupied the position of railroad machinist for seven or eight years; was employed in that capacity at the time he was insured, and when he was injured, and in the intervening time; and had frequently lifted cylinder heads from engines without accident or injury. Railroad machinists usually perform this duty; and it is not a dangerous undertaking, though the piece of machinery is unhandy. On the 3d of April, 1897, he removed a cylinder head seventeen inches in diameter and about one inch thick, and weighing about eighty pounds, from an engine. He did so in the usual way. It was uncomfortably warm, and he used some "waste" to protect his hands. The head stuck, and he picked up a steel bar and removed it, and as he did so he dropped the bar and caught it (the cylinder head) as quickly as he could in order to prevent it from falling, and while he was in a stooping position, standing on his toes. A witness, who saw him catch it, says he "supposed from his movements it was as quick as possible." He was immediately taken sick. His stomach filled with blood, of which he vomited great quantities. He groaned; his face became deadly pale, and assumed a blanched, anxious expression, and clearly indicated that he. was suffering great pain. He continued to vomit blood at intervals until he died. His physician, who attended him in his last illness, testified that his death was caused by the rupture of a blood vessel in his stomach.

We think that the evidence was sufficient to sustain the verdict of the jury as to the means of death. The facts in this case are similar to those in the *United States Mutual Accident Association* v. *Barry*, 131 U.S. 100. In that case the plaintiff's husband was, at the time of his injury, robust and in good health, weighing from 160 to 175 pounds. He and two others jumped from a platform four or five feet from the ground. The other two alighted safely; but the plaintiff's husband, Dr. Barry, ruptured a blood vessel of the stomach, from which he died. Upon this evidence the trial court instructed the jury as follows: "We understand from the testimony, without question, that the deceased jumped from the platform with his eyes open, for his own convenience, in the free exercise of his choice and not from any perilous necessity. He encountered no obstacle in jumping, and he alighted on the ground in an erect posture. So far we proceed without difficulty; but you must go further and inquire, and here is the precise point on which the question turns: was there or not any unexpected or unforeseen or involuntary movement of the body, from the time Dr. Barry left the platform until he reached the ground, or in the act of alighting. Did he or not alight on the ground just as he intended to do? Did he accomplish just what he intended to do, in the way he intended to? Did he or not unexpectedly lose or relax his self control in his downward movement? Did his feet strike the ground as he intended or expected, or did they not? Did he or not miscalculate the distance, and was there or not any involuntary turning of the body, in the downward movement, or in the act of alighting on the ground? These are points directly pertinent to the question in hand.

"And I instruct you that if Dr. Barry jumped from the platform and alighted on the ground in the way he intended to do, and nothing unforeseen, unexpected, or involuntary occurred, changing or affecting the downward movement of his body as he expected or would naturally expect such a movement to be made, or causing him to strike the ground in any different way or position from that which he anticipated, or would naturally anticipate, then any resulting injury was not effected through any accidental means. But if, in jumping or

alighting on the ground, there occurred from any cause any unforeseen or involuntary movement, turn, or strain of the body, which brought about the alleged injury, or if there occurred any unforeseen circumstance which interfered with or changed such a downward movement as he expected to make, or as it would be natural to expect under such circumstances, and as caused him to alight on the ground in a different position or way from that which he intended or expected, and injury thereby resulted, then the injury would be attributable to accidental means.

"Of course it is to be presumed that he expected to reach the ground safely and without injury. Now, to simplify the question and apply to its consideration a common-sense rule, did anything, by chance or not, as expected, happen, in the act of jumping or striking the ground, which caused an accident? This, I think, is the test by which you should be governed, in determining whether the alleged injury, if any was sustained, was or was not effected through accidental means."

Again on the question of external or visible marks of injury the court said: "Visible signs of injury, within the meaning of the certificate, are not to be confined to broken limbs or bruises on the surface of the body. There may be other external indications or evidence which are visible signs of internal injury. Complaint of pain is not a visible sign, because pain you cannot see. Complaint of internal soreness is not such a sign, for that you cannot see, but if the internal injury produces, for example, a pale and sickly look in the face, if it causes vomiting or retching, or bloody or unnatural discharges from the bowels, if, in short, it sends forth to the observation of the eye, in the struggle of nature, any signs of the injury, then those are external and visible signs." In addition to this, the court instructed the jury that the jumping from the platform was external and violent means within the meaning of the policy. That the main question was. "whether there was an accident."

Mr. Justice Blatchford in delivering the opinion of the Supreme Court of the United States in that case, on appeal from the decision of the lower court, said: "It is further urged that there was no evidence to support the verdict because no

accident was shown. We do not concur in this view. The two companions of the deceased jumped from the same platform, at the same time and place, and alighted safely. It must be presumed not only that the deceased intended to alight safely, but thought that he would. The jury were, on all of the evidence, at liberty to say that it was an accident that he did not. The court properly instructed them that the jumping off the platform was the means by which the injury, if any was sustained, was caused; that the question was, whether there was anything accidental, unforeseen, involuntary, unexpected, in the act of jumping, from the time the deceased left the platform until he alighted on the ground; that the term "accidental" was used in the policy in its ordinary, popular sense, as meaning "happening by chance; unexpectedly taking place; not according to the usual course of things; or not as expected;" that, if a result is such as follows from ordinary means, voluntarily employed, in a not unusual or unexpected way, it cannot be called a result effected by accidental means; but that if, in the act which precedes the injury, something unforeseen, unexpected, unusual occurs which produces the injury, then the injury has resulted through accidental means."

In the case before us the deceased was a strong, muscular man. The cylinder head removed weighed only eighty pounds. He had been engaged in the service in which he was employed at the time of his death seven or eight years, and in that time had frequently removed cylinder heads without detriment to himself. Other machinists had been accustomed to do the same kind of work without injury. The jury could have reasonably inferred from the evidence that the death of the deceased was caused by "external, violent and accidental means."

The case at bar is unlike *Feder* v. *Iowa State Traveling Men's Association*, 78 N. W. Rep. 252, cited by appellant. In that case, "the decedent, at the time of his death, was about twenty-six years of age, and had been in Denver, where his death occurred, about nine months. He was suffering from consumption, and went to Denver, and resided there on account of his health. He was benefited by the change of climate and the medical treatment he received, and his health had been considerably improved, and was constantly improving at the

time of his death.   During the day of his death he had been as well as usual, and in the evening was with two of his brothers in their office.   Preparatory to leaving it, the decedent went to a window to close the shutters.   A chair stood in front of the window, and he stood on his toes, and reached over the chair towards the shutters, and, as he did so, blood began to flow from his mouth.   He was placed on a lounge, and died within a few minutes."   In commenting on these facts, the court said:   "The cause of his death was hemorrhage from a ruptured artery, and the evidence would have authorized the conclusion that the rupture of the artery was not due to the disease from which he was suffering.   There is no evidence that he fell, slipped, lost his balance, failed to catch the shutter when he reached for it, or that it moved at his touch more or less readily than he had expected it would move; in other words, there is no evidence whatever that anything was done or occurred which he had not foreseen and planned, excepting the rupture of the artery, and the consequences which resulted from it."

In *Feder* v. *Iowa State Traveling Men's Association*, 78 N. W. Rep. 252, the decedent was in a debilitated condition.   He was incapable of making much effort, physically, without subjecting himself to injury.   In an effort to close the shutters of a window, which could not have required much exertion, he ruptured an artery.   It did not appear in the report of the case we have that he had made the same or a similar effort at any time before the fatal injury.   In the case before us the facts are different.   The decedent, at the time of his injury, was healthy and strong, and had removed cylinder heads frequently in safety, and others in the same employment had done the same act without injury.   At the time he was injured he was attempting to perform the same act in the usual way, but there is reason to believe that he failed in this, and in an effort to prevent the head from falling he made some sudden, unusual, unexpected and involuntary movement of the body, which caused the injury from which he died.   In this way only we can reasonably explain why his last removal of the cylinder head was attended with injury and the others were not.

Second.   One of the stipulations of the policy sued on was that it did not "cover  *  *  *  *  injuries  *  *  *  *  from

overexertion, wrestling, lifting, * * * unnecessary exposure to danger." Appellant insists that it was exempt by this stipulation from liability for the injury which caused the death of Schmaltz. This contention is not correct. One of the duties of Schmaltz was to remove cylinder heads, when it was necessary to be done for the purpose of repairing engines in the course of his employment. The dangers and probabilities of accidents happening while in the discharge of that duty doubtless entered largely into the consideration and contemplation of the parties when the contract of insurance was made. As an evidence of this fact, the appellant required the insured to state his occupation and employment in his application for insurance, and to agree, if he should engage in any occupation or work rated by the appellant "as more hazardous" than the class agreed to, that was the occupation stated in the application, that his "insurance, weekly indemnity, or specific indemnity" should "be limited to the sum which the premium paid by" him would purchase at the fixed rate fixed by the "appellant" for such "increased hazard;" and provided in the policy that "if the insured" was "injured in any occupation or exposure classed" by appellant "as more hazardous than that stated in said application, the insurance, weekly indemnity or fixed indemnity" should "be for such sum" only as the premium would "purchase at the rate" fixed by "appellant" for such "increased hazard." Having obtained this knowledge or notice, and entered into this agreement, the appellant undoubtedly became bound, by the delivery of the policy, to insure Schmaltz, to the extent of $2,000, against all injuries which were caused solely by external, violent and accidental means while he was doing lifting, or making exertions, which pertained to his occupation and employment. Having paid for this protection, he was entitled to its benefit. *Dailey* v. *Preferred Masonic Mutual Accident Association*, 57 N. W. Rep. 186; *Phœnix Ins. Co.* v. *Flemming*, 65 Ark. 61; *Ins. Co.* v. *Brodie*, 52 Ark. 11; *Wilson* v. *Northwestern Mutual Accident Association*, 53 Minn. 470.

Third. It is also provided in the policy that affirmative proof of death must also be furnished to appellant "within two months of time of death; * * * else all claims based

thereon shall be forfeited." The appellant insists that this proof was not furnished, and that, in consequence of such failure, the appellee is not entitled to recover; and appellee contends that this proof was waived.

The facts, as shown by the evidence, are substantially as follows: H. O'Flynn was, at the time Schmaltz was injured and died, general manager of appellant for the states of Missouri, Arkansas and Texas, with his principal place of business in St. Louis, in the state of Missouri. When any person insured by appellant died from an injury, notice of his death was required to be sent to the insurer, and "proof blanks in such cases" were furnished by it through O'Flynn. He had authority to investigate, but not to settle amounts above $50. All blanks were furnished by the appellant.

On the 11th of April, 1897, and within six or seven days after the death of Schmaltz, and as soon as appellee was able, she wrote a letter to O'Flynn, asking for blanks in order to send proofs of the death of her husband. "She stated in her letter that he died from an accident on the 4th of April, 1897, giving the number of the policy by which he was insured and her address. On April 13th, O'Flynn, having received this letter, enclosed it to J. S. Heaton, the appellant's attorney who had charge of such matters, stating that he had merely notified the lady that her letter had been referred to the company, and that he would not do anything further until he heard from him. On the same day he wrote to Mrs. Schmaltz, acknowledging the receipt of her letter, saying that it had been referred to the company, and on hearing from them he would communicate with her further." On the 17th day of April he enclosed to Mrs. Schmaltz a blank 'in which the full particulars of the death of E. Schmaltz were called for, asking her to fill it out and return it to him, and he would forward it to the home office for final claim papers." She filled out the blanks, giving full answers to all questions contained therein, and forwarded it to O'Flynn by mail, and he sent it to appellant, and it received it. "On the 7th of May, 1897, Mrs. Schmaltz not having received final proof papers, wrote to O'Flynn a letter asking for an answer to her letter in which she had enclosed the blank notice of injury which had been furnished by him." Not hear-

ing from him, she went to H. C. Hynson, the attorney employed by appellant, and talked with him about the matter, and he said he could not understand her, and to send some one to talk to him about her business. She then went to see G. A. Hays, and requested him to look after her interest. On the 8th of June, 1897, Hays, in her behalf, wrote a letter to appellant, asking what it intended to do in reference to her claim under the policy. On the 24th of June he wrote to it (the appellant) that he understood from H. C. Hynson that no proof of death had been forwarded, and asked it to send the necessary blanks. (Appellant avoided mentioning the additional proofs until after the time for furnishing them had expired. In the meantime O'Flynn had made an investigation as to the death of Schmaltz. Hence the silence; no additional information was needed.) On the first of July, 1897, Hynson wrote a letter to Hays, in answer to his letter of June 24th, in which he denied liability under the policy on account of the failure to furnish proofs of the death of the insured, and refused, for appellant, to furnish blanks.

Appellant ought to have known that appellee relied upon it to furnish her with blanks to make all the proof of her husband's death that it required. It had been furnishing them for such purposes in such cases. Her letter to O'Flynn asking for blanks to make the necessary proof of death had been forwarded by its general manager to, and received by, it. In response it sent a blank notice of injury, and its agent, through whom it furnished blanks for proof, promised that he would, when the notice was returned to him, forward it to the home office for "final claim papers." The blank for notice was properly filled out, and returned to, and received by, appellant. It knew that she intended to collect the amount for which her husband was insured, and that she intended to make such proof of his death as it required, because she had given notice of death and asked for blanks for that purpose. There was sufficient evidence to induce the jury to believe that it (the appellant) willfully encouraged her to rely upon it to furnish the blanks to make all the proof it required, and intentionallyfailed to furnish any, and thereby waived proof of death by accident—that it willfully and deliberately lulled her into se-

curity, and when the time for making the proof had expired informed her that she had forfeited the policy. It cannot take advantage of such wrong.

Fourth. R. L. Grant testified, in the trial of this action, that he was a practicing physician, and that he attended E. Schmaltz in his last illness. He was allowed to testify, over the objection of appellant, that when he first visited him he asked him what caused the injury, "and he said he was lifting a cylinder head from an engine at the round house in the Cotton Belt yards, and he said he did not know exactly how it did occur;" that "he was lifting it off, and about the time he set it on the ground he felt an uneasiness in his stomach, felt something pop somewhere in him, he did not know where, and he walked off." Appellant insists that the court erred in permitting the witness to testify as he did. If this contention be correct, which we do not decide, no prejudicial error was committed, because the fact that the death of Schmaltz was caused by the rupture of a blood vessel in his stomach while he was removing the cylinder head of an engine he was repairing is undisputed. It was alleged by appellee in her complaint, and was not denied by appellant in its answer; and it was not disputed in the evidence. It is not, therefore, a reversible error.

Fifth. After appellant had cross-examined the witness, R. L. Grant, the physician, appellee asked him whether a rupture of the kind received by Schmaltz "would not more likely occur from a jerk or wrench of the body than from ordinary lifting," and he answered in the affirmative. Appellant objected to this testimony. But it had no right to complain; for on cross-examination the witness, in response to questions asked by it, had stated "that it was not necessary that there should be an unusual jerk or slip to rupture a blood vessel in the stomach, but that it might be ruptured by over-exertion, or by excessive lifting in the usual and ordinary manner of lifting or straining." Having invited appellee to enter this field of inquiry, it should not complain because she accepted the invitation. The testimony elicited by the appellant on cross-examination related to the probability of the manner in which the injury occurred; and that elicited by the re-examination of the witness was confined to the same subject. The witness, on

cross-examination, thought that a blood vessel in the stomach might be ruptured by over-exertion, or by excessive lifting in the usual and ordinary manner of lifting or straining, but, on re-examination, was of the opinion that such a rupture would more likely be caused by a jerk or wrench of the body.

Sixth. We do not think that appellant's objection to the third instruction, given by the court to the jury at the instance of appellee, is tenable when all the instructions given are read and considered together, as it was the duty of the jury to do.

Judgment affirmed.