Settle order on notice.

---

### LEWIS v. IOWA STATE TRAVELING MEN'S ASS'N.

(District Court, S. D. Iowa, C. D. January 22, 1918.)

1. INSURANCE &#9758;455—ACCIDENT INSURANCE—EXTERNAL, VIOLENT AND "ACCIDENTAL MEANS" OF INJURY.

To come within a policy insuring against death resulting from bodily injuries received "through external, violent, and accidental means," it is not sufficient that the result should be accidental, but the means must also have been accidental, or, if the cause of the injury was a voluntary act, its effect must have been unusual and unexpected.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Accidental; Accidental Means.]

2. INSURANCE &#9758;455—ACCIDENT INSURANCE—EXTERNAL, VIOLENT, AND "ACCIDENTAL MEANS" OF INJURY.

Insured discovered a pimple on his lip, which he opened with a gold scarf pin taken from his tie. The pin was infected, and infected the wound, causing his death in a few days. *Held*, that his death was due to an injury received "through external, violent, and accidental means," within the terms of his policy.

3. INSURANCE &#9758;456—ACCIDENT INSURANCE—RISKS INSURED AGAINST.

In such case the insurer is not exempted from liability, by a provision in the policy that it should not be liable for accidental death "resulting wholly or partially, directly or indirectly, from * * * local or general infection," except when such infection or inflammation results from a visible or open wound.

At Law. Action by Maud Lewis, executrix, against the Iowa State Traveling Men's Association. Trial to court. Judgment for plaintiff.

Stipp, Perry, Bannister & Starzinger, of Des Moines, Iowa, for plaintiff.

Sullivan & Sullivan, of Des Moines, Iowa, for defendant.

WADE, District Judge. [1] 1. The first question is whether John F. Bailey the insured, died as the result of bodily injuries received "through external, violent, and accidental means." It would be an

endless and futile task to undertake to review the numerous authorities presented in briefs of counsel, and any effort to reconcile them all would be hopeless. It may be taken as settled by the great weight of authorities that, under language of this kind in a policy, it is not sufficient that the result shall be accidental, but the "means" must be accidental, as well as the result. In the brief, "Accidental Means," by Cornelius, it is well stated:

"Where there is evidence that, in the act which precedes and brings about an injury causing death, something undesigned and fortuitous occurs; that is to say, where there is evidence of an element of accident in the means bringing about the injury, the verdict of a jury holding the company liable will not be disturbed on appeal."

Were the "means" in this case accidental? That is, "unforeseen, involuntary, unexpected;" "happening by chance; unexpectedly taking place; not according to the usual course of things." If, "in the act which precedes the injury, something unforeseen, unexpected, unusual, occurs, which produced the injury, then the injury has resulted through accidental means." U. S. Association v. Barry, 131 U. S. 100, 9 Sup. Ct. 755, 33 L. Ed. 60.

Judge Sanborn well defines "accidental means" in Western Association v. Smith, 85 Fed. 401, 29 C. C. A. 223, 40 L. R. A. 653, as follows:

"The significance of this word 'accidental' is best perceived by a consideration of the relation of causes to their effects. The word is descriptive of means which produce effects which are not their natural and probable consequences. The natural consequence of means used is the consequence which ordinarily follows from their use—the result which may be reasonably anticipated from their use, and which ought to be expected. The probable consequence of the use of given means is the consequence which is more likely to follow from their use than it is to fail to follow. An effect which is the natural and probable consequence of an act or course of action is not an accident, nor is it produced by accidental means. It is either the result of actual design, or it falls under the maxim that every man must be held to intend the natural and probable consequence of his deeds. On the other hand, an effect which is not the natural or probable consequence of the means which produced it, an effect which does not ordinarily follow and cannot be reasonably anticipated from the use of these means, an effect which the actor did not intend to produce, and which he cannot be charged with the design of producing, under the maxim to which we have adverted, is produced by accidental means. It is produced by means which were neither designed nor calculated to cause it. Such an effect is not the result of design, cannot be reasonably anticipated, is unexpected, and is produced by an unusual combination of fortuitous circumstances; in other words, it is produced by accidental means."

[2] In this case the facts are agreed upon. John F. Bailey, the insured, was a strong, vigorous man, in excellent health. He discovered a small pimple on the right side of his upper lip. He removed his gold scarf pin from his necktie and intentionally pricked the pimple with said scarf pin. His lip at said place became immediately infected with staphylococci infection from the scarf pin. The infection spread and caused his death in a few days. It is also agreed:

"That the scarf pin used by insured in pricking his lip communicated or caused infection by being introduced into the tissues of the lip."

Therefore there can be no dispute in the case that the pin was infected; that it carried the cocci upon it. It is not a case of breaking

the skin and having it afterwards infected, but it is specifically agreed "that the infection was caused by, and came from, the scarf pin." If it came from the scarf pin, it is apparent that the cocci were on the scarf pin. It cannot be assumed that the deceased knew that the cocci were upon the pin. There is no basis for the assumption that the deceased intentionally infected his lip. He did the act, which, as a matter of common knowledge, thousands do every year—he used a pin which he had at hand to open a pimple. I suppose it would be safe to say, as a matter of common knowledge, that not once in a thousand times does such use of a pin, even when no effort to sterilize is made, result in infection.

If the injury resulted from the pin alone, and there was no proof that the pin was infected, the accidental result would not be covered by this policy; but the deceased clearly used something which he did not intend to use. He used, not only the pin, but he used an infected pin—a poisoned pin. This infection was such that it could not, in the nature of things, be discovered by him without perhaps a microscopic investigation. To my mind the means were clearly accidental. A man who eats infected food, without knowledge of its infection, is doing something he did not intend to do. The eating of the food is voluntary, but the eating of the poison is not. The housewife goes to the flour bin, kneads her bread, bakes it, and serves it. Those who eat it die. It is found that the bin contains, not only flour, but arsenic. The unfortunates voluntarily ate the bread, composed of flour and arsenic. The "means," causing death, is accidental. I see no distinction in principle between the case at bar and the numerous cases illustrated by ptomaine poisoning, and other cases of unintentional infection.

[3] 2. Is the defendant exempted from liability under its general covenant to pay, by section 6 of article VI of the by-laws, which among other things provides that the "association shall not be liable * * * for accidental death * * * resulting wholly or partially, directly or indirectly, from * * * local or general infection" (except when such infection or inflammation results from a visible or open wound caused by external, violent, and accidental means). What is meant by infection which "results from a visible or open wound"? Strictly speaking, how can infection "result" from a visible or open wound? Modern science has demonstrated that infection "results" from the entry of living organisms into a wound. Here in this case we have a "wound." What caused the wound? The pin and the cocci.

From the agreed facts it must be apparent that the wound was not caused alone by the pin, but that in its nature and character, and possibly its appearance, it was in part caused by the cocci. The fact that the cocci entered the wound in its making, as agreed by the parties, ought not to make any difference in the construction of this provision of the contract. In any event, this being an exception to the general liability clause, if there is any doubt about it, it ought to be resolved in favor of the insured, and it is my judgment that this exception does not furnish a just or legal reason why the defendant should escape liability. Upon the agreed facts there will be a judgment in favor of the plaintiff.

Counsel has asked for an elaborate finding of facts. The court is not required to make any finding of facts, except where the facts are in dispute. In this case there are no facts in dispute. Everything is agreed to. I find no reason for making any finding of facts; but, if counsel feels that finding of facts is necessary to preserve all the rights of the defendant, I shall reconsider this matter.

Counsel for plaintiff will prepare judgment entry and submit it to the attorneys for the defendant, who will have five days in which to file objections thereto. Such judgment entry to reserve proper exceptions.