CONTINENTAL CASUALTY COMPANY *v.* BRUDEN.

Opinion delivered December 17, 1928.

*J. Mitchell Cockrill,* for appellant.

*Wm. J. Houghney, Sam T. Poe, Tom Poe* and *McDonald Poe,* for appellee.

SMITH, J. This is a suit by appellee, as administrator of the estate of Columbus Joel, deceased, to recover under an accident policy issued by appellant insurance company for the accidental death of Joel, the insured, which was alleged to have been caused by heat prostration.

The policy provides that ''the insurance given by this policy is against loss of life (suicide or self-destruction while sane or insane not included), limb, limbs,

sight or time resulting from a personal bodily injury which is effected solely and independently of all other causes by the happening of an external, violent and purely accidental event * * *.''

The testimony on the part of appellee was to the effect that, while Joel was engaged in the performance of his duties as a machinist helper in putting grease in a cellar of an engine, while in a pit under the engine, he became overheated, and died about ten minutes after coming out from under the engine. The testimony was conflicting on this question.

On this issue the court charged the jury as follows:

''You are instructed that, before plaintiff is entitled to recover in this case, he must show by a preponderance or greater weight of the evidence that death resulted solely from heat prostration as alleged, and independently of any other cause. If he has failed to show by a preponderance of the evidence that death resulted solely from such injury, and independently of any other cause, then he cannot recover, and your verdict will be for defendant.''

As the jury returned a verdict in favor of the plaintiff, we must assume that the finding was made that the insured died from heat prostration, and, without setting out the conflicting testimony on this question of fact, we announce our conclusion to be that the testimony was amply sufficient to support this finding.

It is earnestly insisted, however, that, even though the insured came to his death as a result of heat prostration, or sunstroke, this was not a risk covered by the policy under the language quoted above, and the correctness of this contention is the real and the difficult question in the case.

The authorities are united in treating heat prostration and sunstroke as meaning the same thing, but they are in direct conflict as to whether death therefrom is an accidental death.

The case of *Caldwell* v. *Travelers' Ins. Co.*, 305 Mo. 619, 267 S. W. 907, 39 A. L. R. 56, decided by the Supreme

Court of Missouri, November 25, 1924, reviews all the cases on the subject up to that time, and reference is made to it for a citation to these cases, and we will not again review them. The learned justice who wrote the opinion above referred to there said:

"There are two clearly defined lines of cases on this question. One holds that, where an unusual or unexpected result occurs by reason of the doing by insured of an intentional act, where no mischance, slip, or mishap occurs in doing the act itself, the ensuing injury or death is not caused through accidental means; that it must appear that the means used was accidental, and it is not enough that the result may be unusual, unexpected, or unforeseen. The other line of cases holds that, where injury or death is the unusual, unexpected, or unforeseen result of an intentional act, such injury or death is by accidental means, even though there is no proof of mishap, mischance, slip, or anything out of the ordinary in the act or event which caused such injury or death."

Among the numerous cases there reviewed is that of *Standard Life & Acc. Ins. Co.* v. *Schmaltz*, 66 Ark. 588, 53 S. W. 49, 74 Am. St. Rep. 1121, in which the facts were that a railroad machinist, who held an accident policy in the appellant insurance company, was engaged in removing the cylinder head of an engine. The deceased was a strong man, and had frequently removed cylinder heads without injury. On the occasion when his fatal injuries were received the cylinder head stuck, and the insured picked up a steel bar and removed it, and, as he did so, he dropped the bar and caught the cylinder head to prevent it from falling. Insured was immediately taken sick, and began vomiting blood, and continued to do so until his death. The attending physician testified that the insured had ruptured a blood vessel, and the court held that this evidence was sufficient to sustain the finding by the jury that the death of the insured was accidental, and that the injury was caused solely by external,

violent and accidental means, against which the policy sued on had insured the deceased.

The case of *Ætna Life Ins. Co.* v. *Little,* 146 Ark. 70, 225 S. W. 298, was a suit on an accident policy very similar to the one here sued on. The insured in that case was killed by a man who mistook him for a burglar, and we held that this testimony warranted the jury in finding that the death of the insured was accidental. We there said:

"This court has had frequent occasion to define the words 'accidental injury' and 'accidental death.' In the case of *Standard Life & Accident Ins. Co.* v. *Schmaltz,* 66 Ark. 595, 53 S. W. 49, the court approved an instruction given by the trial court, in a suit on an accident policy, that the term 'accidental' was used in the policy in its ordinary, popular sense, as meaning 'happening by chance; unexpectedly taking place; not according to the usual course of things; or not as expected:' that, if a result is such as follows from ordinary means, voluntarily employed, in a not unusual or unexpected way, it cannot be called a result effected by accidental means; but that if, in the act which precedes the injury, something unforeseen, unexpected, unusual, occurs, which produces the injury, then the injury has resulted through accidental means." (Citing cases).

The case of *Richards* v. *Standard Acc. Ins. Co.,* 58 Utah 622, 200 Pac. 1017, 17 A. L. R. 1183, was a suit on a policy insuring against "bodily injuries effected directly, exclusively, and independently of all other causes, through accidental means." Insured sustained sunstroke, and died therefrom, and the court considered the question whether sunstroke was a bodily injury, and, after an extended review of the authorities, both medical and legal, held that it was.

Many cases are cited in the note to this case by the annotator, who says in his note that "it is held by the weight of authority, and apparently the better reasoned cases, that a sunstroke, suffered by one unexpectedly, is within the protection of an accident policy insuring

against bodily injuries sustained through external, violent, and accidental means.'' After a consideration of many of these cases, we have accepted and adopted that view.

The policy here sued on provided, as a condition precedent to the assertion of liability under it, that proof of loss under it be made within ninety days after the appointment of the administrator, and it is insisted that this proof was not made as required, and the court charged the jury that, if this proof was not furnished as required by the policy, there could be no recovery, and it is earnestly insisted that the undisputed testimony shows that the proof was not made.

Upon this question appellee testified that, a few days after burying the insured, he qualified as his administrator, and wrote the appellant company to furnish papers for proof of death, and, when they were furnished him, he sent the papers to the undertaker in Van Buren, where the insured had died, and that the undertaker turned the papers over to the doctor who was called to the insured when he was stricken, but who did not arrive until after the insured was dead. The doctor filled in the blanks and returned them to witness, who gave them to an agent of the company in Little Rock, who promised to forward the papers to the home office of the insurance company. Witness himself sent to the home office of the company his letters of administration, as he had been requested to do in a letter from the home office.

The officers of the insurance company having in charge for the company the matter of passing upon the claim, testified that they had not received the proof of death from the local agent in Little Rock, or from any one else, and that the local agent in Little Rock, to whom the plaintiff administrator delivered the papers for transmission to the company, was an ordinary soliciting agent for the industrial department of the company, and had nothing whatever to do with the railroad department, under which Joel's claim came. The local agent did not testify, but one of the company's officers testified that he

was a vice president in charge of the accident and health claims, and he made the following answer to one of the interrogatories propounded to him: "I might state that absolutely no proof of accident has been received by the company in regard to the death of Columbus Joel. On the contrary, we did receive a death certificate stating that the death was due to heart disease, which was not covered by the policy."

In view of the testimony above stated, and this admission, we think the jury was warranted in finding that proof of the death was made and furnished to the insurance company.

As we have said, the testimony was conflicting as to whether deceased was ever under the engine, and, over the objection of appellant, Oscar Coleman was permitted to testify that Joel said, as he emerged from under the engine, "Brother Coley, I got it." It is insisted that this testimony was hearsay, and was not a part of the *res gestae,* because it was too remote, and was simply a narrative of a past event, to-wit, that Joel had got something from under the engine.

The important issue of fact was whether Joel had been in a pit under the engine in proximity to the firebox, and the witness Coleman was introduced to show that Joel had been under the engine, in the pit. Coleman testified that he was a coppersmith helper and an extra cellar packer, and that Joel was also a cellar packer, and was put to work on a rush job, that is, an engine which had just come in and was to be sent out at once, and that witness and Joel worked on the engine at the same time, and that Joel, in packing the driving cellar, had his head within a few inches of the firebox, which was very hot, and, as he came from under the engine, he made the remark, "Brother Coley, I got it," and wiped his face, and, as Joel walked over to a work-bench, he threw up his hands, and fell dead.

There is some dispute as to what was meant by the remark, "I got it," but we think it was competent as tending to show that Joel had been under the engine, and

it was admitted for that purpose. The remark was not a narrative of a past event, but was an exclamation or statement forming a part of the deceased's conduct in coming out from under the engine, and we think was admissible as such. *Payne* v. *Thurston,* 148 Ark. 456, 230 S. W. 561.

Objection was made to the instructions given, but the essence of these objections appears to be that there was no case for the jury, and that a verdict should have been directed in appellant's favor; but, as appears from what has been said, we do not concur in this view.

Upon a consideration of the whole record we find no error, and the judgment must be affirmed. It is so ordered.