LANDRESS *v.* PHOENIX MUTUAL LIFE INSURANCE CO. ET AL.

No. 295. Argued February 5, 1934.—Decided March 5, 1934.

---

492

Mr. William L. Frierson, with whom Mr. R. P. Frierson was on the brief, for petitioner.

*Mr. Vaughn Miller* for Phoenix Mutual Life Insurance Co., respondent.

*Mr. J. F. Finlay* for Travelers Insurance Co., respondent.

MR. JUSTICE STONE delivered the opinion of the Court.

This case comes here on certiorari to review a judgment of the Court of Appeals for the Sixth Circuit, 65 F. (2d) 232, which affirmed a judgment of the district court, denying recovery on two policies of accident insurance. Separate suits brought by petitioner, the beneficiary of the policies under which her deceased husband was the insured, were consolidated and were heard and decided on demurrer. The insured, while playing golf, suffered a sunstroke, from which he died. Petitioner sought recov-

ery of amounts stipulated, in one policy, to be paid if death should result

" directly and independently of all other causes from bodily injuries effected through external, violent and accidental means, and not directly or indirectly, wholly or partly from disease or physical or mental infirmity,"

and, in the other policy, if death should result

" from bodily injuries effected directly and independently of all other causes through external, violent and accidental means."

Both declarations, in each of four counts, alleged that the deceased in the month of August, while in good health and while playing golf in his accustomed manner at a place where many others were playing without injury, was suddenly and unexpectedly overcome from the force of the sun's rays upon his head and body and that shortly afterward he died; that an autopsy revealed that there was no bodily infirmity or disease which could have been a contributing cause of his death. In one count of each declaration it was alleged that at the time the insured received the injury resulting in his death there was, unknown to him, a temporary disorder or condition of his body, not amounting to a physical or mental infirmity within the meaning of the policies, which, for the time being, rendered him more than ordinarily sensitive to the heat of the sun and that this temporary and unknown condition " intervened between his intentional act of playing golf, which he intended and expected to perform safely and which others did perform safely at the same time and place, and the injury which followed."

Petitioner argues that the death, resulting from voluntary exposure to the sun's rays under normal conditions, was accidental in the common or popular sense of the term and should therefore be held to be within the liability clauses of the policies. But it is not enough, to establish liability under these clauses, that the death or injury

was accidental in the understanding of the average man— that the result of the exposure "was something unforeseen, unsuspected, extraordinary, an unlooked for mishap, and so an accident," see *Lewis* v. *Ocean Accident & G. Corp.*, 224 N.Y. 18, 21; 120 N.E. 56; see also *Aetna Life Ins. Co.* v. *Portland Gas & Coke Co.*, 229 Fed. 552—for here the carefully chosen words defining liability distinguish between the result and the external means which produces it. The insurance is not against an accidental result. The stipulated payments are to be made only if the bodily injury, though unforeseen, is effected by means which are external and accidental. The external means is stated to be the rays of the sun, to which the insured voluntarily exposed himself. Petitioner's pleadings do not suggest that there was anything in the sun's rays, the weather or other circumstances, external to the insured's own body and operating to produce the unanticipated injury, which was unknown or unforeseen by the insured.

We do not intimate that injuries resulting from as impalpable a cause as the inadvertent introduction into the body of noxious germs may not be deemed to be effected by external accidental means. See *Western Commercial Travelers Assn.* v. *Smith*, 85 Fed. 401; *Jensma* v. *Sun Life Assur. Co.*, 64 F. (2d) 457. Nor do we say that in other circumstances an unforeseen and hence accidental result may not give rise to the inference that the external means was also accidental. Compare *Jensma* v. *Sun Life Assur. Co.*, *supra*; *Gustafson* v. *New York Life Ins. Co.*, 55 F. (2d) 235. But, in the light of such knowledge as we have, no such inference can arise from the bare allegation of death by sunstroke, compare *Pope* v. *Prudential Ins. Co.*, 29 F. (2d) 185; *Ryan* v. *Continental Casualty Co.*, 47 F. (2d) 472, with no indication that some unforeseen or unintended condition or combination of circumstances, external to the state of the victim's body, contributed to the

accidental result. The petitioner has thus failed to plead facts establishing the liability defined by the policy.

In *U.S. Mutual Accident Assn.* v. *Barry*, 131 U.S. 100, the insured suffered an internal injury caused by his jumping voluntarily from a platform to the ground, a distance of four or five feet. Recovery was allowed of amounts stipulated by the policy to be paid upon proof of bodily injury "effected through external violent and accidental means." There was evidence from which the jury might have inferred that the insured alighted in a manner not intended, causing a jar or shock of unexpected severity. This Court held that the trial judge correctly left to the jury the question whether the insured jumped or alighted in the manner he intended and properly charged that, if he did not, it might find that the injury was caused by accidental means, pp. 109, 110, 121.

This distinction between accidental external means and accidental result has been generally recognized and applied where the stipulated liability is for injury resulting from an accidental external means. See *Aetna Life Ins. Co.* v. *Brand*, 265 Fed. 6; *Lincoln National Ins. Co.* v. *Erickson*, 42 F. (2d) 997; *Jensma* v. *Sun Life Assur. Co.*, supra; *Order of United Commercial Travelers* v. *Shane*, 64 F. (2d) 55; contra, *Mutual Life Ins. Co.* v. *Dodge*, 11 F. (2d) 486. And injury from sunstroke, when resulting from voluntary exposure by an insured to the sun's rays, even though an accident, see *Ismay, Imrie & Co.* v. *Williamson* [1908] A. C. 437, has been generally held not to have been caused by external accidental means. *Nickman* v. *New York Life Ins. Co.*, 39 F. (2d) 763; *Paist* v. *Aetna Life Ins. Co.*, 54 F. (2d) 393; *Harloe* v. *California State Life Ins. Co.*, 206 Cal. 141; 273 Pac. 560; *Continental Casualty Co.* v. *Pittman*, 145 Ga. 641; 89 S.E. 716; *Semancik* v. *Continental Casualty Co.*, 56 Pa. Super. Ct. 392; see *Elsey* v. *Fidelity & Casualty Co.*, 187 Ind. 447;

120 N.E. 42; *Richards* v. *Standard Accident Ins. Co.*, 58 Utah 622; 200 Pac. 1017; contra, *Continental Casualty Co.* v. *Bruden*, 178 Ark. 683; 11 S.W. (2d) 493; *Lower* v. *Metropolitan Life Ins. Co.*, 111 N.J.L. 426; 168 Atl. 592.

Affirmed.

Mr. Justice Cardozo, dissenting.

I am unable to concur in the decision of the Court.

1. A cause does not cease to be violent and external because the insured has an idiosyncratic condition of mind or body predisposing him to injury. *Silverstein* v. *Metropolitan Life Ins. Co.*, 254 N.Y. 81; 171 N.E. 914; *Leland* v. *Order of U. C. Travelers*, 233 Mass. 558, 564; 124 N.E. 517; *Collins* v. *Casualty Co.*, 224 Mass. 327; 112 N.E. 634; *Taylor* v. *N.Y. Life Ins. Co.*, 176 Minn. 171; 222 N.W. 912. Under a policy phrased as this one, the insurer may be relieved of liability if the predisposing condition is so acute as to constitute a disease. See cases *supra*. Here the complaint alleges that the idiosyncrasy was not a physical or mental disease, and that it appeared from an autopsy that there was no bodily infirmity or disease which could have been a contributing cause of death. Since the case is here on demurrer, those allegations must be accepted as true. The plaintiff may be unable to prove them at the trial. She should have the opportunity. There has been no failure to "plead facts establishing the liability defined by the policy."

2. Sunstroke, though it may be a disease according to the classification of physicians, is none the less an accident in the common speech of men. *Ismay, Imrie & Co.* v. *Williamson*, [1908] A.C. 437, 439. *Lane* v. *Horn & H. Baking Co.*, 261 Pa. 329; 104 Atl. 615. The suddenness of its approach and its catastrophic nature (*Connally* v. *Hunt Furniture Co.*, 240 N.Y. 83, 87; 147 N.E. 366) have made that quality stand out when thought is uninstructed in the mysteries of science. *Lower* v. *Metropolitan Life*

*Ins. Co.*, 111 N.J.L. 426; 168 Atl. 593, collating the decisions. Violent it is for the same reason, and external because the train of consequences is set in motion by the rays of the sun beating down upon the body, a cause operating from without.

" In my view this man died from an accident. What killed him was a heat-stroke coming suddenly and unexpectedly upon him while at work. Such a stroke is an unusual effect of a known cause, often, no doubt, threatened, but generally averted.by precautions which experience, in this instance, had not taught. It was an unlooked for mishap in the course of his employment. In common language, it was a case of accidental death." Per Loreburn, L. C., in *Ismay, Imrie & Co.* v. *Williamson, supra.*

3. The attempted distinction between accidental results and accidental means will plunge this branch of the law into a Serbonian Bog. " Probably it is true to say that in the strictest sense and dealing with the region of physical nature there is no such thing as an accident." Halsbury, L. C. in *Brintons* v. *Turvey,* L.R. [1905] A.C. 230, 233. Cf. *Lewis* v. *Ocean Accident & Guaranty Corp.,* 224 N.Y. 18, 21; 120 N.E. 56; *Innes* v. *Kynoch,* [1919] A.C. 765, 775. On the other hand, the average man is convinced that there is, and so certainly is the man who takes out a policy of accident insurance. It is his reading of the policy that is to be accepted as our guide, with the help of the established rule that ambiguities and uncertainties are to be resolved against the company. *Mutual Life Ins. Co.* v. *Hurni Packing Co.,* 263 U.S. 167, 174; *Stipcich* v. *Metropolitan Life Ins. Co.,* 277 U.S. 311, 322. The proposed distinction will not survive the application of that test.

When a man has died in such a way that his death is spoken of as an accident, he has died because of an accident, and hence by accidental means. So courts of high authority have held. *Lower* v. *Metropolitan Life Ins. Co.,*

*supra* (a case of sunstroke); *Gallagher* v. *Fidelity & Casualty Co.*, 163 App. Div. 556; 148 N.Y.S. 1016; 221 N.Y. 664; 117 N.E. 1067 (sunstroke); *Jensma* v. *Sun Life Assurance Co.*, 64 F. (2d) 457; *Western Commercial Travelers' Assn.* v. *Smith*, 85 Fed. 401; *Mutual Life Ins. Co.* v. *Dodge*, 11 F. (2d) 486; *Lewis* v. *Iowa State Traveling Men's Assn.*, 248 Fed. 602.[1] So the holder of this policy might reasonably assume.

If he had thought about the subject, he might have had his impressions fortified by the ruling of the House of Lords that a workman who suffers a heat-stroke has a claim for relief under the Workmen's Compensation Act. *Ismay, Imrie & Co.* v. *Williamson, supra.* The British Act (6 Edw. 7, c. 58, § 1) gives compensation for personal injury " by accident " arising out of and in the course of the employment. Injury by heat-stroke was held to be injury " by accident." The result would hardly have been different, certainly one insured would not have looked for any difference, if for the phrase " injury by accident " the lawmakers had substituted the words injury " by means of accident," or injury by accidental means.

The principle that should govern the interpretation of the policy in suit was stated with clarity and precision by Sanborn, J., in a case quoted in the margin.[2]

The insured did not do anything which in its ordinary consequences was fraught with danger. The allegations

---

[1] The decisions are collated in 17 A.L.R. 1197, with the comment that by the weight of authority sunstroke suffered unexpectedly is within the coverage of a policy insuring against injury by external, violent and accidental means. Compare *Continental Casualty Co.* v. *Bruden*, 178 Ark. 683; 11 S.W. (2d) 493; *Higgins* v. *Midland Casualty Co.*, 281 Ill. 431; 118 N.E. 11; *Elsey* v. *Fidelity & Casualty Co.*, 187 Ind. 447; 120 N.E. 42; *Continental Casualty Co.* v. *Clark*, 70 Okla. 187; 173 Pac. 453; *Bryant* v. *Continental Casualty Co.*, 107 Tex. 582; 182 S.W. 673; *Richards* v. *Standard Accident Ins. Co.*, 58 Utah 622; 200 Pac. 1017.

of the complaint show that he was playing golf in the same conditions in which he had often played before. The heat was not extraordinary; the exertion not unusual. By misadventure or accident, an external force which had hitherto been beneficent, was transformed into a force of violence, as much so as a stroke of lightning. The opinion of the court concedes that death "from sunstroke, when resulting from voluntary exposure to the sun's rays," is "an accident." Why? To be sure the death is not intentional, but that does not make it an "accident" as the word is commonly understood, any more than death from indigestion or pneumonia. If there was no accident in the means, there was none in the result, for the two were inseparable. No cause that reasonably can be styled an accident intervened between them. The process of causation was unbroken from exposure up to death. There was an accident throughout, or there was no accident at all.

The judgment should be reversed.

---

[2] *Western Commercial Travelers' Assn.* v. *Smith, supra,* p. 405: "An effect which is the natural and probable consequence of an act or course of action is not an accident, nor is it produced by accidental means. It is either the result of actual design, or it falls under the maxim that every man must be held to intend the natural and probable consequence of his deeds. On the other hand, an effect which is not the natural or probable consequence of the means which produced it, an effect which does not ordinarily follow and cannot be reasonably anticipated from the use of those means, an effect which the actor did not intend to produce and which he cannot be charged with the design of producing under the maxim to which we have adverted, is produed by accidental means. It is produced by means which were neither designed nor calculated to cause it. Such an effect is not the result of design, cannot be reasonably anticipated, is unexpected, and is produced by an unusual combination of fortuitous circumstances; in other words, it is produced by accidental means."

The principle thus formulated has been accepted in many of the decisions cited in footnote 1, *supra.*