**Jason M. BALDWIN, Plaintiff,**

v.

**STONEBRIDGE LIFE INSURANCE CO., f/k/a J.C. PENNY LIFE INSURANCE CO., Defendant.**

**Civ.A. No. 02–K–1224.**

United States District Court, D. Colorado.

Sept. 23, 2003.

---

Mark Adam Herber, Jorgensen, Motycka & Lewis, PC, Longmont, CO, for Plaintiff.

James E. Gigax, Bloom, Murr & Accomazzo, Denver, CO, for Defendant.

## ORDER DENYING MOTION FOR SUMMARY JUDGMENT

KANE, District Judge.

This accidental death insurance coverage dispute arises out of the death of Plaintiff's wife after she jumped out of the vehicle her husband was driving in the midst of a heated argument. The vehicle, at the time the wife jumped, was traveling at 55 miles per hour. The Defendant insurer moves for summary judgment, arguing Plaintiff cannot demonstrate a genuine issue of fact as to whether Mrs. Baldwin's mortal injuries were "accidental."

The insurance certificate at issue provides:

> INJURY OR INJURIES, for which benefits are provided, means accidental bodily injuries ... which are the direct cause of Loss, independent of disease or bodily injury ....
>
> LOSS means ... Loss of life.

Certificate p. 2. The Certificate also excludes coverage for injuries that are "intentionally self-inflicted, while sane or insane ...." *Id.* p. 4.

Defendant contends that under the applicable "objective standards of contract interpretation, [it] must prevail as a matter of law." Mot. Summ. J. at 10. Defendant asserts there is no dispute that Mrs. Baldwin willfully got out of a speeding car, such that "there is no issue for the jury because, as a matter of law, the death is the natural and probable result of the jump, regardless of the subjective intent of the insured." *Id.* at 11–14 (citing *Carroll v. CUNA Mut. Ins. Society,* 894 P.2d 746, 753 (Colo.1995))("'every man must be held to intend the natural and probable consequence of his deeds'")(quoting Justice Cardozo in dissent in *Landress v. Phoenix Mutual Life Ins. Co.,* 291 U.S. 491, 501, 54 S.Ct. 461, 78 L.Ed. 934 (1934)).

As an initial matter, the premise that Mrs. Baldwin voluntarily or intentionally "jumped" out of the car is not undisputed. Notwithstanding his own statements at the scene and others in the car at the time of the incident (tragically including the Baldwin's school-aged children) that Mrs. Baldwin "jumped" out of the car, Mr. Baldwin now contends her actual fall was more probably unintentional. Specifically, Mr. Baldwin asserts that his wife, "an extremely heavy woman" (Pl. Resp. Mot. Summ. J. at 2), had been sitting in the front seat with her legs cramped upwards because of the placement of a shopping bag at her

feet, so that when she opened the door to "walk home,"[1] she lost her balance and unintentionally "rolled out of the car." For purposes of summary judgment, then, it is factually disputed that Mrs. Baldwin's exit from the car was voluntary, rather than an "accident."

Even if it were undisputed that Mrs. Baldwin's exit from the car was voluntary, moreover, the fact that she voluntarily exited a car traveling at 55 mph is not. For purposes of summary judgment, the evidence is that Mrs. Baldwin wanted to get out of the car to "walk home" and asked her husband to pull over. Is it possible that Mrs. Baldwin believed the car had stopped or slowed down sufficiently for her to exit safely? Might a reasonable jury so find after considering the evidence under an objective standard?

These questions are, in my view, appropriately answered not by a trial judge on summary judgment, but by a jury whose primary function is to make determinations about people's conduct based on objective standards. *See generally*, A. Miller, *The Pretrial Rush to Judgment: Are the "Litigation Explosion," "Liability Crisis," and Efficiency Clichés Eroding our Day in Court and Jury Trial Commitments?* 78 N.Y.U. Law. R. 982, 1132 (June 2003)(consideration of objective standards of "human behavior, reasonableness, and state of mind [are] matters historically considered at the core province of jurors").[2] In Professor Miller's words, a decision now that no reasonable jury could find Mrs. Baldwin's exit from the car an accident "discount[s] (1) the importance of a jury's evaluation of witnesses, (2) the greater sensory impact on the trier of live testimony, and (3) the value of trial cross-examination based on … a full presentation of the evidence." *Id.* at 1090. That such an evaluation might be colored by other evidence suggesting Mrs. Baldwin was an emotionally unstable woman who struck herself in arguments with her husband and had threatened in front of her children to "hang" herself if he "was not nice to her," *see* Dep. of Greeley Police Officer Ed Clark at 14, reinforces, rather than undermines, this conclusion. My (rather strong) view of what was, or was not, objectively reasonable in this case is not salient. The determination, quite simply, is for a group of citizen jurors to make based on the evidence presented and their combined experience as members of the community, who may collectively reach a different conclusion.

I note several of the cases offered by Defendant in support of its position merely stand for the proposition that trial judges have, on summary judgment, taken questions of what is or is not objectively reasonable in accidental death cases from juries where the act precipitating insured's death was voluntary. *E.g. Zuliskey v. Prudential Ins. Co.*, 48 A.2d 141, 143, 159 Pa.Super. 363 (1946)(no issue for jury where natural and probable result of jump from car moving 25 mph was death); *but see Schreck v. Reliance Standard Life Ins. Co.*, 104 F.Supp.2d 1373 (S.D.Fla.2000)(factually disputed whether insured accidentally fell out of car). Others are inapposite, like autoerotic asphyxiation cases presented on cross-motions for summary judg-

---

1. Statements made by the Baldwin children and the other relative in the car indicated Mrs. Baldwin opened the door while it was moving and said she wanted to "walk home."

2. Professor Miller's evocative article provides one of the best-reasoned and exhaustive considerations of Rule 56 and the litigation practices that surround it since the Supreme Court issued its 1986 *Matsushita* trilogy governing the application of Rule 56 and is recommended.

ment, *e.g. Sigler v. Mutual Benefit Life Ins. Co.*, 506 F.Supp. 542 (D.Iowa 1981)(concluding "reasonable person would have foreseen that death could result from [conduct]") or analyzed under the intentionally self-inflicted clause of the subject accidental death policy which has not been raised (and would not be amenable to summary judgment if it were). *Critchlow v. First UNUM Life Ins. Co. of America*, 198 F.Supp.2d 318 (W.D.N.Y.2002).

For the foregoing reasons, Defendant's Motion for Summary Judgment is DE-NIED. An agreeable pretrial conference date will be set after consultation with counsel by separate Minute Order.