INA W. KOESTER, Plaintiff Below, Plaintiff in Error, *v.* THE MUTUAL LIFE INSURANCE COMPANY OF NEW YORK, a corporation of the State of New York, Defendant Below, Defendant in Error.

(*January* 16, 1934.)

WOLCOTT, Chancellor, LAYTON, C. J., RICHARDS, RODNEY and REINHARDT, J. J., sitting.

*P. Warren Green* and *C. Edward Duffy* (of Hastings, Stockly and Duffy) for Plaintiff in Error.

*Caleb S. Layton* (of Richards, Layton and Finger) for Defendant in Error.

Supreme Court. Writ of Error to the Superior Court for New Castle County, No. 5, June Term, 1933.

REINHARDT, J., delivering the opinion of the Court:

This is a writ of error to the Superior Court for New Castle County, brought to review the proceedings and judgment in an action therein instituted by Ina W. Koester against the Mutual Life Insurance Company of New York. The object of the suit is to recover double indemnities upon two policies of life insurance, one for three thousand dollars,

the other for two thousand dollars. Both of the policies were taken out by William Koester, husband of the plaintiff, in his lifetime, and the plaintiff is designated as beneficiary in both policies.

The provisions of both policies are substantially the same except as to dates of issue and amounts payable. Each of said policies contains, in identical phraseology, a clause designated in said policies as "double indemnity for death by accident." This clause is as follows:

"The Company—promises to pay—upon receipt at said Home Office of due proof of the death of William Koester—the insured, three thousand dollars to his wife, Ina W. Koester, the beneficiary or, if there further be received at said Home Office due proof that such death resulted directly from bodily injury, received after the date of issue of this policy, independently and exclusively of all other causes, and that such bodily injury was effected solely through external, violent and accidental means, and that such death occurred within sixty days after the date of such bodily injury, promises to pay to said beneficiary, instead of the face amount of this policy (either six thousand dollars or four thousand dollars that is double the amount of the face of the policy) provided, however, that this double indemnity shall not be payable—if such death result from any violation of law by the insured."

The facts proved in the trial court on behalf of the plaintiff were in substance as follows:

On the 12th of September, 1931, the plaintiff and her husband, the insured, were in a room in their house. For some time prior thereto the insured had lived apart from his wife and not at their home. On the day in question the insured had come to the home of his wife and they had some argument about the discharge of a practical nurse who was staying with the plaintiff at her home.

At the time aforesaid plaintiff was weak and in a highly nervous condition due to the fact that she had not yet fully recovered from an operation for appendicitis which had taken place some two months prior thereto. The insured knew of the weakened physical condition of the plaintiff on the 12th of September, 1931. The plaintiff was

then under the care of a physician and said she was afraid to stay in her home alone. The insured told her he would go out and buy her a gun, and she replied that he need not do that because she already had one. She produced the gun, which was an automatic. The insured then said she was not in a fit condition to have a gun and demanded that she give it to him. The plaintiff refused, and thereupon the insured attempted to take the gun from her and she strongly resisted his attempt. A struggle then ensued between the plaintiff and the insured for possession of the gun and during the continuance of this struggle the weapon was discharged, the bullet therefrom entering the lower part of the body of the insured, proceeding in an upward direction and causing a serious injury from which death resulted shortly thereafter.

There was no quarrel and apparently no bad feeling between the plaintiff and the insured which preceded the struggle, and so far as the evidence in the case discloses, the only reason that prompted the insured to seek possession of the gun was that he thought his wife was not in a fit condition to keep such a weapon in her possession.

In the trial Court at the close of the testimony on behalf of the plaintiff on defendant's motion the Court directed a non-suit which the plaintiff refused to accept whereupon the Court gave to the jury binding instructions to return a verdict for the defendant upon the ground that the death of the insured was not caused by external, violent and accidental means within the meaning of the said two policies and the law.

The errors assigned to have been made by the trial court and which are here under review, are four in number, but in reality they all raise but a single question, viz.: Did the trial Court err in holding that there was no evidence to go to the jury upon which it might properly find that the death of the insured was caused by external, violent and

accidental means within the meaning of said two policies and the law?

In other words, did all the evidence adduced on behalf of the plaintiff show a cause of action against the defendant?[1]

The clause in the policies relating to injury caused by "accidental means," is one which has received two distinct and opposed interpretations in the courts of this country.

One line of decisions holds that any injury that is accidental is covered by the clause. The other line draws a distinction between an accidental injury and an injury caused by accidental means.

Under the first line of cases the injury here complained of would be covered by the policies; under the latter line it would not.

In the case of *Metropolitan Life Insurance Co. v. Landsman*, 5 *W. W. Harr.* (35 *Del.*) 384, 165 *A.* 563, 567, the Superior Court for New Castle County approved and followed the second line of decisions above mentioned. The *Landsman Case* was well and carefully considered and we believe, correctly decided. Indeed, in the brief of the plaintiff in the instant case it is admitted that the *Landsman Case* correctly states the law.

The *Landsman Case* was upon a demurrer to plaintiff's declaration, on the ground that the injury received by the

---

[1] In the court below the insurance company further contended that there could be no recovery by Mrs. Koester under the double indemnity clause of the policy sued on because it appeared from the facts that the death of her husband, the insured, had been caused by an assault and battery committed by him upon her when he attempted to take possession of the gun.

In this connection the Court said:

"The Court will say nothing respecting the defendant's first contention other than this: that insured's struggle with his wife for the possession of the gun did not constitute an assault and battery, and his death did not, therefore, result from a violation of the law by the insured."

plaintiff was not caused by accidental means within the terms of the policy.

The facts alleged in the declaration were as follows: The plaintiff held a policy which indemnified him against loss of time from his occupation, resulting from bodily injuries caused directly and independently of all other causes, by violent and accidental means. While this policy was in effect the plaintiff in attempting to lift a sack of potatoes, an act within the scope of his employment, violently wrenched and sprained his shoulder and back and thereby suffered loss of time from his occupation. He claimed damages under the terms of the policy.

The Court after an extensive review of authorities in other jurisdictions, said,

"Applying the rules we have mentioned, and attempted to describe to the case in hand, what should be the result? The plaintiff, at the time of his injury, was voluntarily carrying, or attempting to carry, a sack of potatoes on his shoulder, in the usual way, no doubt in the way he had often carried such a load before and in the way he wanted to carry it. The injury he received was unexpected and unforeseen. It was, therefore, accidental in a way. But while the injury or result was accidental because unexpected, can it be said that the means which caused the injury were accidental? We must distinguish, if there is a difference, between the result and the means that produced it. What were the means in the case before us? Nothing more nor less than carrying, or attempting to carry, the sack of potatoes on the shoulder. Surely then, there was nothing accidental in the means which the plaintiff employed, as there would have been if he had unexpectedly fallen with his burden and the fall had been the means of his injury. * * *

"The conclusion of the Court is that the injury received by the plaintiff was not caused by violent and accidental means within the meaning of the policy sued on. No cause of action, therefore, is shown and defendant's demurrer must be sustained."

The definition of accidental means is well set forth in the leading case of *United States Mutual Accident Association v. Barry*, 131 *U. S.* 100, 9 *S. Ct.* 755, 762, 33 *L. Ed.* 60. In this case the Court said:

"That the term 'accidental' was used in the policy in its ordinary, popular sense, as meaning 'happening by chance, unexpectedly taking

place, not according to the usual course of things, or not as expected;' that if a result is such as follows from ordinary means, voluntarily employed, in a not unusual or unexpected way, it cannot be called a result effected by accidental means; but that if, in the act which precedes the injury, something unforeseen, unexpected, unusual, occurs which produces the injury, then the injury has resulted through accidental means."

In her brief the plaintiff in error cites and relies upon the *Barry Case* and its definitions of accidental means. She says:

"If a person does something intentionally and the direct result of the doing of that act is an injury, then the injury is not caused by accidental means; but if, in the doing of that act, some intervening factor or act occurs that is unusual, unexpected or unforeseen, and that intervening factor or act produces the injury, then that injury is caused by accidental means. * * * In the case at bar it is obvious that it was not the attempt of the insured to take the gun from the beneficiary that was the cause of the injury resulting in his death, but that it was an intervening factor or act that produced the injury, viz., either his or her fingers unintentionally released the safety appliances on the gun, pulling the trigger, and the resulting discharge of the gun that produced the injury, and we maintain that it was something unusual, unforeseen, or unexpected in the light of all the facts of the case, in producing the discharge of the gun."

With this contention of the plaintiff in error we do not agree.

We are of the opinion that while the death was accidental, in that it was unforeseen and unexpected, yet the means which caused the death were not accidental.

In a struggle to obtain possession of a loaded firearm, whether automatic and equipped with safety devices or not, the discharge of the weapon during the struggle was not an unforeseeable nor unusual result. It was a natural consequence of the effort made by the insured to obtain the weapon, and might well have been expected as probably apt to occur during the course of the struggle.

This voluntary attempt of the insured, we think, was the direct cause of his death. If there had been no such attempt by the insured, there would have been no such injury to him. Therefore, his death was not caused by acci-

dental means within the meaning of the policies of insurance. Under all the evidence in the case there was no cause of action shown, and the trial Court was correct in its instruction to the jury to find a verdict for the defendant. In view of this holding it is unnecessary to discuss or decide whether the death of the insured resulted from any violation of law by him.

The judgment of the Court below is affirmed.