97 So.2d 4 (1957)
GULF LIFE INSURANCE COMPANY, Appellant,
v.
Frances H. NASH, Appellee.
Supreme Court of Florida.
July 31, 1957.
Rehearing Denied October 7, 1957.
*5 Harris, Barrett, McGlothlin & Dew, St. Petersburg, for appellant.
Mann, Harrison, Roney, Mann & Masterson, St. Petersburg, for appellee.
PER CURIAM.
Chief Justice TERRELL, Justice HOBSON, Justice ROBERTS, Justice DREW, Associate Justice BUFORD and District Judge ALLEN agree to the portion of the opinion by Justice THOMAS which affirms the judgment of the lower court on the ordinary life policy.
Chief Justice TERRELL, Justice HOBSON, Justice ROBERTS, Associate Justice BUFORD and District Judge ALLEN agree to the opinion by Justice DREW which affirms the judgment of the lower court both as to the life policy and the accident policy.
Justice THOMAS dissents from the portion of the opinion by Justice DREW which affirms the judgment with respect to the accident policy.
It is thereupon ordered that the judgment of the lower court be
Affirmed.
TERRELL, C.J., HOBSON, ROBERTS, and DREW, JJ., BUFORD, Associate Justice, and ALLEN, District Judge, concur.
*6 THOMAS, Justice.
The appellant issued to Claude M. Nash, Jr., a special accident policy by which it agreed to pay the beneficiary a certain amount if the insured should meet his death as a "result of bodily injury caused solely by external, violent and accidental means" and also issued to him an ordinary life policy by which it agreed to pay the beneficiary a certain sum upon proof of the death of the insured.
The appellee, eventual beneficiary, brought this action alleging that Claude M. Nash, Jr., died by accidental means and claiming the amounts of both policies. In an answer the appellant denied any liability on either contract except for return of the premiums paid on the life policy, and as a defense to the claim based on that policy plead the condition it contained that "[i]f the Insured shall within two (2) years from the date hereof die by his own hand or act, * * * the only amount payable hereunder shall be a sum equal to the premiums paid thereon, with interest at the rate of six per cent (6%) per annum." It was averred, in respect of the ordinary life policy, that the insured had died by his own hand within two years after the issuance of the policy; in respect of the accident policy, it was denied that the insured had met his death by accidental means.
When the allegations of the pleadings are distilled, we find that the lone issue is the manner in which the insured died. Although it is true that if he killed himself intentionally there could be no recovery under either policy, it does not follow that if the insured did not actually commit suicide, recovery on both policies was proper. The obligation of one policy and the condition of the other are not so closely related, or inseverable, that recovery should be allowed on both or neither.
At the outset we should say that according to the authorities we have examined, the words death "by his own hand or act" should not be construed literally, but to mean death as a result of an intent on the part of the insured to take his own life. Fleetwood v. Pacific Mut. Life Ins. Co., 246 Ala. 571, 21 So.2d 696, 159 A.L.R. 171.
It is true, as appellant asserts, that it was appellee's burden to prove, in support of the claim based on the accident policy, that death of the insured came by accidental means. Mutual Life Ins. Co. of New York v. Johnson, 122 Fla. 657, 166 So. 442. The appellant states in its brief that it does not appear to make much difference whether, under the life policy, it was the burden of the appellant to prove suicide or the burden of the appellee to prove that the death was one covered by the policy, but, we think, in respect of this policy, that it was incumbent on the appellee only to establish death and that it was appellant's burden to prove that recovery should be defeated by existence of the condition we have already quoted.
That Claude M. Nash, Jr., shot himself there is no doubt; the points in controversy are (1) whether or not he intended suicide, and (2) if he did not so intend, whether or not his death came from "accidental means." He fired the pistol in the presence of a young man and two young women. Two other men were in an adjoining room. The insured took the weapon from a table drawer, placed it against his chest, pulled the trigger twice and the gun "snapped"; the third time he pressed the trigger, the gun fired and Nash was killed almost instantly. We will presently elaborate on these facts.
Testimony, obviously believed by the jury, in which were detailed the movements of the insured and his behavior for many hours preceding his death was sufficient basis for the conclusion that Nash was not in such mental state that he would deliberately kill himself in the presence of three companions and in the hearing of two others. So we do not disturb the judgment insofar as it relates to the claim based on the ordinary life policy. Death was established and the appellant failed to prove suicide.
*7 The remainder of the judgment, founded on the so-called accident policy is another matter. To say that there was no suicide does not mean ipso facto, that the nature of the death was such that liability on the accident policy became fixed. The liability of the appellant on that contract could only be established by preponderance of evidence introduced by the appellee that Nash died by "accidental means."
When the young people gathered at the apartment, there was much chatter and giggling. The landlady, who described the noise as "teen-age prattle", started to the apartment to see if she could not prevail on the group to be more quiet. The insured, at a time when he was in good humor, took a pistol from a table drawer and walked to the bathroom holding the weapon at his head while the girls yelled to put the gun down. The insured returned from the bathroom and exchanged the pistol for another which he then took to the bathroom where, to quote from the appellee's brief, he "examined it in some way." It was upon his return the second time that he pointed the gun at his chest, pulled the trigger twice, and, despite the cry of one of his companions to stop because the gun might be loaded, pulled the trigger the third time and was mortally wounded. He immediately cried, "My God, the gun was loaded * * * I am shot. Call a doctor." Then he collapsed.
We conclude that the insured did not come to his death by accidental means. While he was showing off, he doubtless did not intend to shoot himself but only to frighten his friends by pretending to do so. As we have written, he took the pistol into the bathroom, after discarding an unloaded one, and, as the appellee says, made some examination of it. He evidently miscalculated the number of times it would snap before it would discharge. But he was engaged in a dangerous, foolhardy, act and although the result was not intended, the means were deliberate as distinguished from accidental.
We think the true rule for distinguishing between deaths that result from accidental means and those that result from means that are voluntary is well stated in Urian v. Equitable Life Assur. Soc., 310 Pa. 342, 165 A. 388, and cases cited therein. Several illustrations are given in the opinion but the two factual situations which by contrast make the categories clear are the one involved in that litigation and one considered in a cited case, Hesse v. Travelers' Ins. Co., 299 Pa. 125, 149 A. 96. In both cases death had resulted from poisonous gas. In one instance a patient died from an anesthetic, a poisonous gas, as he was about to undergo an operation. The court said, in the cited case, that the insured did not expire by accidental means because he had voluntarily inhaled the gas and therefore the only unforeseen element was the unexpected result. In the main case a man was killed by carbon monoxide gas while he worked on his car in a garage with an open door near the exhaust pipe. It was said by the court that his death was caused by accidental means because he had unconsciously, involuntarily, inhaled the gas.
The Supreme Court of Delaware dealt with a similar situation in Koester v. Mutual Life Insurance Co. of New York, 36 Del. 537, 179 A. 327, 329. A man and his wife were struggling for possession of a gun when it fired and killed the man. The couple were not quarreling but the man was trying to get possession of the weapon because he thought his wife was incapable of handling it. The question was whether or not the death was the result of accidental means. The court held that while the death was accidental, because "unforeseen and unexpected," the means were not. The discharge of the gun was not unusual or unforeseeable, but could well have been anticipated. The voluntary act of the insured was the direct cause of death, said the court, for had he not attempted to gain possession of the weapon he would not have been killed. So the death was held not to have resulted from accidental means. The latter case was followed by the Supreme Court of *8 Delaware in Prudential Insurance Company of America v. Gutowski, 49 Del. 233, 113 A.2d 579, when it was held in effect, that death resulting from an overdose of sleeping medicine did not amount to death by accidental means because even though the insured may not have intended the result, she did intend to take the medicine.
In the instant case the insured did a foolish and hazardous thing. He did not purposely shoot himself but he did deliberately place a gun to his chest and pull the trigger three times, when he evidently knew that all the chambers were not empty. The means were, therefore, not accidental though the intention probably was for the firing pin to strike three empty chambers instead of only two.
It is my conclusion that recovery was properly allowed on the life policy but improperly allowed on the accident policy.
DREW, J., dissents in part with Opinion.
HOBSON and ROBERTS, JJ., and BUFORD and ALLEN, Associate Justices, agree with DREW, J.
DREW, Justice (dissenting in part).
The pertinent provisions of the accident policy involved in this case are as follows:
"Indemnity for death by accidental means. Upon receipt of due proof that while this Policy was in full force and effect and all premiums duly paid, the death of the Insured occurred as a result of drowning solely through accidental means or as the result of bodily injury caused solely by external, violent and accidental means, as evidenced by a visible contusion or wound on the exterior of the body (except in the case of internal injuries revealed by an autopsy) and that such death occurred within ninety days after the date of occurrence of such injury and as a direct result thereof independently and exclusively of all other causes, * * * [the principal sum shall be paid the beneficiary.] The burden of proof shall be upon the beneficiary to prove that death resulted by accidental means within the provisions of the policy."
I agree to that portion of the majority opinion which affirms the judgment on the ordinary life policy. The record amply supports the finding of the jury that the insured did not commit suicide and the judgment on the ordinary life policy necessarily rests on this premise because had the jury found otherwise, no verdict could have been lawfully returned in favor of the beneficiary. Having thus determined that the insured did not commit suicide and there being no contention that his death resulted from natural causes, it inevitably follows that his death was accidental. Synonyms of accidental are fortuitous, contingent, happening by chance, unintended, chance, undesigned.
With reference to the accident policy, in concluding "that the insured did not come to his death by accidental means" the opinion of Mr. Justice THOMAS places this Court with those which draw a distinction between the term "accidental means" and the terms "accident" or "accidental results." This line of cases has created a morass of decisions which have become shrouded in a semantic and polemical maze and the result has been, as stated in McCullough v. Liberty Life Insurance Company, 1928, 125 Kan. 324, 264 P. 65, 67, 57 A.L.R. 963, "almost a wilderness of cases in which varying facts and situations have been applied to varying principles." As long ago as 1934 Mr. Justice Cardozo, in dealing with this subject, stated:
"The attempted distinction between accidental results and accidental means will plunge this branch of the law into a Serbonian Bog. `Probably it is true to say that in the strictest sense and *9 dealing with the region of physical nature there is no such thing as an accident.' * * * On the other hand, the average man is convinced that there is, and so certainly is the man who takes out a policy of accident insurance. It is his reading of the policy that is to be accepted as our guide, with the help of the established rule that ambiguities and uncertainties are to be resolved against the company. * * * When a man has died in such a way that his death is spoken of as an accident, he has died because of an accident, and hence by accidental means. * * * If there was no accident in the means, there was none in the result, for the two were inseparable. * * * There was an accident throughout, or there was no accident at all." Dissenting opinion, Landress v. Phoenix Mutual Life Ins. Co., 1934, 291 U.S. 491, 498, 54 S.Ct. 461, 463, 78 L.Ed. 934.
The best considered cases have eliminated from consideration any distinction between "accident" and "accidental means" and words of similar import.
In the 1956 Cumulative Supplement to Volume 29, American Jurisprudence, page 108, it is stated:
"Accordingly, a number of courts draw a distinction between `accident' and `accidental means' on the theory that although the result of an intentional act may be an `accident,' the act itself, that is, the cause, where intended, is not an `accidental means.' However, in an increasing number of jurisdictions, the distinction between the term `accidental means' and the terms, `accident,' `accidental result,' `accidental injury,' `accidental death,' and the like, has been rejected or repudiated, and the terms are regarded as legally synonymous."
Cited in support of this statement are the following cases: Burr v. Commercial Travelers Mutual Accident Ass'n, 1946, 295 N.Y. 294, 67 N.E.2d 248, 166 A.L.R. 462; Equitable Life Assur. Soc. v. Hemenover, 1937, 100 Colo. 231, 67 P.2d 80, 110 A.L.R. 1270; Taylor v. New York Life Ins. Co., 1929, 176 Minn. 171, 222 N.W. 912, 60 A.L.R. 959; Newsoms v. Commercial Casualty Ins. Co., 1927, 147 Va. 471, 137 S.E. 456, 52 A.L.R. 363; Carter v. Standard Accident Ins. Co., 1925, 65 Utah 465, 238 P. 259, 41 A.L.R. 1495; Handley v. Mutual Life Ins. Co., 1944, 106 Utah 184, 147 P.2d 319, 152 A.L.R. 1278; Annotation: 166 A.L.R. 469, 473.
There appears to be little consistency in the decisions of the courts of those jurisdictions which distinguish between the above quoted terms. A study of the many cases on the question reveals the fulfilment of the prophecy of Mr. Justice Cardozo. An example of the results which arise from an attempt to draw such a distinction is the case of Koester v. Mutual Life Ins. Co. of New York, 1934, 36 Del. 537, 179 A. 327, 329, cited in support of the conclusion reached in the opinion by Mr. Justice THOMAS. The death of the insured in that case resulted from a gunshot wound received by him in a struggle between himself and wife over a loaded pistol. In holding that such death did not occur from "accidental means" the court stated: "In a struggle to obtain possession of a loaded firearm, whether automatic and equipped with safety devices or not, the discharge of the weapon during the struggle was not an unforeseeable nor unusual result. It was a natural consequence of the effort made by the insured to obtain the weapon, and might well have been expected as probably apt to occur during the course of the struggle." As much could be said of the great majority of accidents. It seems to me that such doctrine of foreseeability is a doctrine totally unsuited and unadaptable in construing accident policies. Moreover, the rationale of these cases seems to be founded not only in the doctrine of foreseeability but intrinsically in negligence on the part of the insured. Were we to make this principle a part of the law of this State, it would not only do violence to the reason for buying accident insurance but if it did not preclude *10 recovery in a great majority of deaths arising from accidents, it would place an almost insurmountable burden on the insured to enforce liability.
The principle of law is firmly imbedded in the jurisprudence of this State that contracts of insurance should be construed most favorably to the insured. To draw such a fine distinction between the words "accident" and "accidental means" would do violence to this principle. It is a classic example of a distinction without a difference. As a practical matter, the average person buying accident insurance policies assumes that he is covered for any fortuitous and undesigned injury. The average man has no conception of the judicial niceties of the problem and even the most learned judge or lawyer, in attempting to understand and comprehend the niceties of the distinction, is left in a state of bewilderment and confusion.
For the above reasons I conclude that the judgment appealed from should be affirmed in toto.
HOBSON and ROBERTS, JJ., and BUFORD and ALLEN, Associate Justices, concur.