**Florence MANEVAL, Executrix of the Last Will and Testament of Clark E. Ney, and Guardian for Joyce K. Ney et al., Plaintiffs,**

v.

**LUTHERAN BROTHERHOOD, a Corporation of the State of Minnesota and Dorothy E. Ney, Defendants.**

Superior Court of Delaware,
Kent.

Aug. 20, 1971.

Maurice A. Hartnett, III, Dover, for Florence Maneval, Executrix.

Henry Ridgely, Dover, for Carol J. Owens and Inal M. Arnett, by Richard Pepper, their next friend.

Roger P. Sanders, Wilmington, for Lutheran Brotherhood.

Helen Balick, Legal Aid Society of Delaware, Wilmington, for Dorothy E. Ney.

## OPINION

CHRISTIE, Judge.

This is a suit upon a life insurance policy which provides for double indemnity if death results from bodily injury effected solely by external, violent and accidental means. The policy in question, written by the defendant insurance company, Lutheran Brotherhood, is in the face amount of $15,-000.00 with an additional sum of $15,000.00 payable under circumstances outlined in an "Accidental Means Death Benefit Agreement" attached thereto. The beneficiaries have brought this suit seeking a judgment that the double indemnity provisions are applicable to the death here involved. The issue is now before the Court on plaintiffs' motion for summary judgment.

The insured party, Clark E. Ney, was killed August 28, 1963, by his wife, Dorothy

E. Ney, who was subsequently convicted of second degree murder. Mrs. Ney did not testify at her murder trial and there were no other eyewitnesses to the killing. The facts surrounding this death must be ascertained from the deposition of Mrs. Ney taken by the defendant insurance company and from the record of her murder trial.

The killing in question took place in the family kitchen at approximately 11:00 P. M. on August 28, 1963, shortly after Mr. Ney had returned home. Mrs. Ney's version of the events surrounding the killing indicate, that upon Mr. Ney's return she asked her husband where he had been. He replied by screaming that he was using dope and had been out with another woman. In apparent reaction to that statement, both immediately reached for a .22 caliber pistol which happened to be lying on the snack bar between them. Mrs. Ney says she is unable to recount any other details of the encounter. In her deposition she does indicate that prior to her husband's death their marriage had been marked by two separations and an uncertain amount of violent physical behavior directed by the husband toward Mrs. Ney and her four children. No violence had been directed toward Mrs. Ney for the two years preceding the killing.

Mrs. Ney was named as the primary beneficiary in an insurance policy on Mr. Ney's life. On March 17, 1967, she assigned her interests in that policy to her children, plaintiffs Carol J. Owens, Joyce K. Ney, Inal M. Arnett and Clark E. Ney, Jr. The same children are also the named secondary beneficiaries in the policy. The executrix of the insured's estate, Mrs. Florence Maneval, is named as a defendant in this suit but she asserts no claim and takes the position that the above mentioned secondary beneficiaries are entitled to the proceeds of the policy.

■ The general rule is that a beneficiary of an insurance policy who kills the insured by murder cannot take the proceeds of the policy. This is an extension of the common-law doctrine that no man

shall profit by his own wrong. 46 C.J.S. Insurance § 1171, p. 57; Life Insurance Company of Virginia v. Cashatt, 206 F. Supp. 410 (E.D.Va., 1962). Mrs. Ney is thus precluded from recovery under the facts of this case. The question then arises as to whether, under the policy, the proceeds are properly paid to the contingent beneficiaries or devolve upon the estate of the insured.

The policy designates Dorothy E. Ney as beneficiary "if surviving", entitling the secondary beneficiaries to recovery if she does not survive the death of her husband. Although there are cases to the contrary, the better rule in similar cases in other courts gives effect to the underlying intent of the insured and permits the contingent beneficiaries to recover despite the fact that the primary beneficiary, barred from recovery by operation of law, has in fact survived the insured. Life Insurance Company of Virginia v. Cashatt, *supra*. Carter v. Carter, 88 So.2d 153 (Fla.1956); *Contra*, Bullock v. Expressmen's Mut. Life Ins. Co., 234 N.C. 254, 67 S.E.2d 71 (1951).

■ Inasmuch as all parties agree that any proceeds which are payable under the policy should go to the four children as secondary beneficiaries and this disposition is supported by existing case law, this Court concluded that such a distribution is proper in this case and the $15,000.00 regular coverage has already been paid out to the secondary beneficiaries.

The Court now turns to the issue of whether or not the insurer is liable for payment of an additional $15,000.00 under the double indemnity provisions of the policy. The relevant provision states:

"The Society agrees to pay the amount of the Accidental Means Death Benefit set out below, in addition to the amount otherwise payable under the Contract, upon receipt at its Home Office of due proof that the death of the Insured resulted directly, and independently of all other causes, from bodily injury effected solely by external, violent and accidental means * * *."

The policy further states that no benefit is payable if death resulted directly or indirectly from "committing an assault or felony" or "taking drugs".

█ The claimants have the burden of proving that Mr. Ney's death was effected solely through accidental means and also that it was not a direct or indirect result of the taking of drugs, or his commission of an assault. Prudential Insurance Co. of America v. Gutowski, 10 Terry 233, 113 A. 2d 579 (1955).

The plaintiffs contend that they have met their burden of proof and that Mrs. Ney's conviction and the other facts before the Court support a conclusion that the killing was without any such provocation on the part of the insured as would result in the death being considered to be caused by other than "accidental means". Plaintiffs say that no issue of material fact remains, and that they are, therefore, entitled to summary judgment.

In the interpretation of insurance contracts, Delaware continues to recognize the difficult distinction between an "accidental death" and death by "accidental means", despite the warning of Justice Cardozo that "the attempted distinction between accidental results and accidental means will plunge this branch of the law into a Serbonian Bog." Landress v. Phoenix Mut. Life Ins. Co., 291 U.S. 491, 499, 54 S.Ct. 461, 463, 78 L.Ed. 934 (Dissenting opinion) (1934).

The distinction as applied in this state has been discussed in the following terms:

"There are two lines of decisions upon the question, in sharp disagreement. One line rejects the distinction holding that any death that may be said to be 'accidental', i. e., unforeseen and unexpected, is covered by the policy. The other line recognizes the distinction, and gives effect to the precise language of the policy clause. These decisions hold that the immediate or proximate cause of death must be accidental, and if death results as the natural and probable consequence of the voluntary act of the insured death does not occur by accidental means." Prudential Insurance Company of America v. Gutowski, *supra*.

In Koester v. Mutual Life Ins. Co. of New York, 6 W.W.Harr. 537, 179 A. 327 (1934), a case relied upon by defendants, the insured was killed as he struggled to take a loaded gun away from his wife. There was no evidence of a quarrel between the insured and his wife prior to the struggle. The insured apparently sought the gun only because he thought his wife was not in a fit physical and mental condition to have it. The Delaware Supreme Court, in affirming a trial court decision that the death of the insured was not caused by external, violent and accidental means, stated:

"We are of the opinion that while the death was accidental, in that it was unforeseen and unexpected, yet the means which caused the death were not accidental.

In a struggle to obtain possession of a loaded firearm, whether automatic and equipped with safety devices or not, the discharge of the weapon during the struggle was not an unforeseeable nor unusual result. It was a natural consequence of the effort made by the insured to obtain the weapon, and might well have been expected as probably apt to occur during the course of the struggle.

This voluntary attempt of the insured, we think, was the direct cause of his death. If there had been no such attempt by the insured, there would have been no such injury to him. Therefore, his death was not caused by accidental means within the meaning of the policies of insurance." Koester v. Mutual Life Ins. Co. of New York, *supra*.

The facts of *Koester, supra*, must be distinguished from those of the present case. In the case at bar there is no evidence that a struggle for the gun took place between Mr. and Mrs. Ney or that the death was the result of a voluntary attempt on the

part of the insured to gain control of the gun.

Where the evidence indicates that a killing was without voluntary provocation on the part of the insured and was unforeseen as far as the insured was concerned, it has been held that recovery under an "accidental means" policy is not barred. Fulnettle v. North American Mut. Ins. Co., 4 Terry 505, 50 A.2d 614 (Super.Ct.1946).

On the other hand, recovery was denied where the insured was killed by the enraged husband of a woman with whom the insured was engaging in adultery, the Court holding that the conduct of the insured was so tied with the result that it became a means, without which it would not have happened, and here contributed proximately to the result. Szymanska v. Equitable Life Ins. Co., 7 W.W.Harr. 272, 183 A. 308 (Super.Ct.1936).

■ The burden of proving that the insured died solely by accidental means may be met by establishing that the insured through his own acts did not directly contribute to his violent death by deliberately exposing himself to a situation where death was likely to result. If, on the other hand, his death resulted as the natural and probable consequence of his voluntary conduct and such result was reasonably to be foreseen the means may not be regarded as accidental. Prudential Insurance Co. of America v. Gutowski, *supra*. See also cases collected in 26 A.L.R.2d 436 (1952). Thus, if one places himself in a position that may reasonably be expected to bring violence or injury to himself, it cannot be said that the result was effected solely through accidental means. See O'Bar v. Southern Life & Health Ins. Co., 232 Ala. 459, 168 So. 580 (1936).

■ The terms "accidental death" and "death by accidental means" as used in insurance contracts are not limited in scope to death by typical accident such as an auto accident or a fall from a high place. Both terms may also encompass death caused by sudden, unexpected external force even when such force is set in motion by a person deliberately intending to harm the victim. An entirely unforeseeable and unprovoked killing, amounting to murder, would, for example, be both an "accidental death" and "death by accidental means" for purposes of double indemnity recovery.

■ The difficulty with the attempted distinction between mere "accidental death" and "death by accidental means" comes where the death itself is accidental, in that the deceased at least did not expect it, but the conduct of the deceased was such as to make death a reasonably foreseeable consequence of such conduct. Under such circumstances the rule in Delaware is that although the death may have been accidental from the victim's viewpoint, the *means* causing the death—i. e. deceased's reckless conduct—was not accidental and so there is no recovery.

It is this distinction that the Court is required to endeavor to apply here.

The Court is not called upon to make a moral judgment on Mr. Ney's conduct or to decide whether or not his conduct was reprehensible. Double indemnity payments are contractual and are not dealt out as a reward to the beneficiaries of those who died in a typical accident and withheld in cases where the deceased was foolish or even evil in his conduct immediately before his death. Recovery by the secondary beneficiaries is not dependent upon a finding that deceased died under honorable conditions. A finding that he died while making nasty statements to his wife or even as a result of such remarks does not in itself bar recovery under the Delaware cases unless he should have known he might get shot for such talk. The determining issue is a matter of application of limitations imposed by contract. The central inquiry is whether the deceased's conduct was such as to make his violent death a reasonably foreseeable consequence of such conduct. If his conduct does not meet that test, his death by murder is deemed to be by accidental means no matter how reprehensible his conduct may have been.

When plaintiffs brought forth evidence that deceased died as a result of a gun shot wound inflicted by another person a prima facie case of death by accidental means was made out. The evidence in this case, however, goes much further and indicates that the assailant was found beyond a reasonable doubt to have been guilty of murder. This verdict indicates the presence of implied malice on the assailant's part. Murder is not easily foreseen. It would take strong evidence to establish that the victim's action was the ,foreseeable and proximate cause of his death by murder.

The evidence in this case indicated that during many years of unhappy married life even physical violence on Mr. Ney's part led only to arguments or sometimes to separations, not to violent retaliation. The couple had been separated twice before and were planning a third separation. The gun was on the countertop because Mr. Ney had earlier asked his wife to get it for him as a part of his property he was to remove to his separate place of abode. There had never been a prior shooting.

There is no evidence that deceased voluntarily engaged in a dangerous struggle for a loaded weapon or that in the course of a struggle the weapon discharged thereby sending him to the death he should have anticipated. Here the circumstances indicate that he reached for the weapon but, when he failed to get it, his wife committed murder by shooting him down in cold blood.

Such shooting may be somewhat understandable but the death was by "accidental means" as far as the deceased was concerned under Delaware insurance law.

The record also establishes that the death was not caused directly or indirectly by defendant's committing an assault or by his taking of drugs.

Judgment will be entered in favor of plaintiffs. Since the principle contention in this suit revolves around the double indemnity which defendant did not acknowledge as due to any beneficiary, the suit will not be regarded as an interpleader action for purposes of awarding costs or attorneys fees. Defendant must pay the costs.

Plaintiffs are requested to submit an appropriate order.