Marvin **BYRD**, Appellant,

v.

**NATIONWIDE MUTUAL INSURANCE COMPANY, Appellee.**

No. 79–393.

District of Columbia Court of Appeals.

Argued March 24, 1980.

Decided June 10, 1980.

Rehearing and Rehearing En Banc Denied July 9, 1980.

---

Robert J. Stanford, Washington, D.C., for appellant.

Gerald Herz, Washington, D.C., with whom Jeffrey W. Ochsman, Washington, D.C., was on brief, for appellee.

Before KERN, FERREN and PRYOR, Associate Judges.

1. Va. Code §§ 18.1–21, –16; 18.1–268.1, –268.3.

2. Appellant was rendered a paraplegic.

KERN, Associate Judge:

Appellant was convicted in Virginia of attempted murder and possession of a sawed off shotgun.[1] During the criminal episode which led to his arrest and conviction he was shot by police officers and severely wounded.[2] Appellant submitted claim to appellee with whom he was insured at the time of the shooting "against loss resulting from . . . accidental bodily injury which is the sole cause of the loss." Appellee denied his claim. He brought suit for breach of contract and for a declaratory judgment that the disability income insurance policy was in full force and effect at the time of the criminal incident and applicable to his injury.

Appellant's position, both before the trial court and in this court, is that the language in the policy should be read literally and that in accordance with its terms he is entitled to recover for his loss incurred as the result of his accidental injury. As defined by appellant, any calamitous event resulting in injury is an accidental injury. Only such an event as is specifically enumerated in the Exceptions provided by the policy is excluded, he asserts. Using the policy exceptions as an aid in defining events which are *not* "accidental" within the meaning of the policy, he asserts that the shooting was accidental and that he is entitled to recovery under the policy for his loss due to the gunshot wounds inflicted upon him by the Virginia police.

The trial court directed a verdict in favor of appellee upon the appropriate motion.[3] The trial judge dealt with the question of what constitutes an accidental injury under a disability insurance policy in his ruling:

The Court is satisfied that the overwhelming majority of jurisdictions embrace one test in determining the instant question. In fact, it would appear that only the State of Indiana excepts from the test, that is, one of foreseeability

3. The court denied an earlier motion for summary judgment by appellee.

under all the circumstances, or as stated at 44 Am.Jur.2d 1248 in this language: "Despite some variety in the language used, the general rule is to the effect that the mere fact that a person insured against accidental injury, or death, voluntarily and wrongfully assaulted another will not be sufficient to characterize as nonaccidental all possible injuries which he received in the course of, or as a consequence of his attack, *but such injuries may be regarded as accidental unless they were a natural or a probable result of the insured's actions reasonably foreseeable by him, or by a reasonably prudent man in his position.* Clearly, injuries or death sustained by an insured in an encounter brought about by an assault committed by him upon another with a deadly weapon, or upon one who he knew had such a weapon, are not sustained by accident or accidental means within the meaning of an accident policy, since under such circumstances the injury or death is the natural and probable cause of his act."

The record discloses that Mr. Byrd initiated the event by firing the weapon at a police officer, obviously an armed individual, and that the return fire by the officer and other officers was, indeed, a natural and probable consequence of that action.

[Supp. Record at 21–22; emphasis added.]

We are satisfied that the trial court's reasoning and conclusion was correct and adopt them as our own. *See generally, McCrary v. New York Life Insurance Company,* 84 F.2d 790 (8th Cir. 1939); 26 A.L.R.2d 399, 410 (1952).[4] We are further satisfied that the trial court correctly directed a verdict upon the particular evidence presented here.

4. Our decision in *Dent v. Virginia Mutual Benefit Life Insurance Co.,* D.C.App., 226 A.2d 166 (1967), has no bearing on our holding here. There, we held that the phrase "died by his own hand or act" was synonymous with "died by suicide" but the opinion in that case did not address the issue presented here: the meaning of the term "accidental bodily injury."

5. Appellant's effort at trial was to prove that he lacked the intent to use the weapon he had

■ Appellant also argues that even if the trial court's interpretation of the policy is correct, he is entitled to a new trial at which he can testify that "following commission of the crime, he withdrew from any aggression and rendered himself no threat whatever to the police. . . . [T]his would have made appellant's injury 'accidental' even under the erroneous standard of the trial court. The police would have become the ultimate aggressors." (Reply Brief at 6.)

The record does not reflect that appellant ever made a proffer at trial to support his assertion that he ceased his attack and withdrew from his criminal venture and thereafter was shot and wounded by the police. Indeed, appellant's counsel, in arguing to the trial court on the pending motion for a directed verdict, acknowledged:

Whether those police officers' shots were responsive and required, or whether they were otherwise, *we have not sought . . . nor has the defense to determine.* [Supp. Record at 12; emphasis added.]

We conclude appellant is not entitled to a new trial at which he would present evidence which he did *not proffer* at the first trial.[5]

*Affirmed.*

FERREN, Associate Judge, dissenting:

I respectfully dissent. This case should have gone to the jury.

I agree with my colleagues and the trial court that under a disability income policy insuring against "loss resulting from . . . accidental bodily injury," the following general rule applies:

been carrying on the night of his confrontation with the police. In sum, he sought only to demonstrate he had *never* been the aggressor. The trial court quite properly invoked the doctrine of collateral estoppel pursuant to *Ross v. Lawson,* D.C.App., 395 A.2d 54 (1978), and prevented the parties from going behind the Virginia conviction of appellant for attempted murder to relitigate the issue of his criminal intent.

[T]he mere fact that a person insured against accidental injury, or death, voluntarily and wrongfully assaulted another will not be sufficient to characterize as nonaccidental all possible injuries which he received in the course of, or as a consequence of his attack, *but such injuries may be regarded as accidental unless they were a natural or a probable result of the insured's actions reasonably foreseeable by him, or by a reasonably prudent man in his position.* [*Ante* at 809 (quoting supp. record at 21–22 with emphasis added).]

By affirming a directed verdict here, however, my colleagues, in effect, are holding as a matter of law that whenever someone embarks on a criminal enterprise carrying a gun, he or she necessarily foresees using it, getting shot, and being disabled. Under these circumstances, a jury question will never be presented under the general rule set forth above; recovery under a disability policy covering "accidental bodily injury" will automatically be precluded. Although one can sympathize with the result achieved by the majority, I disagree with a directed verdict here, for two reasons.

First, D.C. Code 1973, § 35–712(3)(b)(10) provides, with an immaterial exception, that unless different wording is approved by the Superintendent of Insurance, no policy shall contain an "exclusion" for disability arising in connection with commission of a felony unless the following language is used:

"Illegal Occupation: The insurer shall not be liable for any loss to which a contributing cause was the insured's commission of or attempt to commit a felony or to which a contributing cause was the insured's being engaged in an illegal occupation."

Such an exclusion has been authorized by the D.C. Code since 1934. No such provision appears in the Nationwide policy at issue here.

The significance of the omission is this: Because the policy itself is the insured's only guide to coverage and has a prominently-featured "exclusions" section an insured typically would expect coverage for disability attributable to injuries unintentionally received unless the policy specifically excludes it. Traditionally, therefore, the insurer protects itself against liability for disability incurred during the commission of a felony by inserting an exclusion of the sort prescribed in § 35–712(3)(b)(10). Because insurance is a highly competitive business, however, a company often will risk marketing a disability policy without this or other traditional exclusions, in the hope that its agents and independent brokers will be able to convince consumers that its policy is preferable to others because of more complete coverage. Nationwide has taken that risk here and, given my colleagues' ruling, has benefited from judicial creation of a virtually absolute exclusion that Nationwide itself elected to omit.

I do not quarrel with the general rule allowing a factfinder to conclude that, despite the absence of a specific exclusion, the insured is barred from recovery because the injury causing disability was not "accidental;" *i.e.*, it was, rather, "a natural or a probable result of the insured's actions reasonably foreseeable by him." In other words, I agree that, in fairness to the insurance company, the absence of a felony exclusion should not be determinative; the law should recognize that disability can arise in a context that reasonable persons would not call "accidental." But whether particular conduct is accidental is a classic jury question. Given that insurance contracts should be construed, "if reasonably possible," in favor of coverage, 13 J. Appleman, Insurance Law and Practice § 7386 (1976),[1] and that it is not against public policy to permit insurance recovery for injuries leading even to death attributable to

---

1. More specifically, according to Appleman:

[I]t must not be forgotten that the primary object of all insurance is to insure. A construction should be taken which will render the contract operative rather than inopera-tive, and which will sustain the claim for *indemnity, if reasonably possible,* rather than exclude it. [*Id.* at 148–49 (footnotes omitted).]

the insured's criminal activity,[2] I see no basis for withholding this case from the jury.

There is a second reason for reversal. I suspect that the trial court would have sent the case to the jury were it not for the court's erroneous application of our case law on collateral estoppel. Appellant attempted to introduce evidence concerning his altercation with the police, in order to demonstrate that, under the circumstances, his injury from a police bullet was not reasonably foreseeable. Accordingly, appellant's counsel made a proffer:

Specifically, we would want to include the fact that he at a time when he was *unarmed* had no intent to cause harm to anyone and was *thereafter shot.* [Emphasis added.]

Appellant's counsel proffered, in other words, that there was a hiatus between the time appellant initiated the gunfire and the time the police shot him. He allegedly had withdrawn from the conflict, and thus the police gunfire, and his consequent injury, were not reasonably foreseeable.[3]

The trial court, nonetheless, excluded evidence of the alleged hiatus, citing *Ross v. Lawson,* D.C.App., 395 A.2d 54 (1978), for the proposition that the doctrine of collateral estoppel barred such evidence, since appellant's criminal convictions for attempted murder and possession of a sawed-off shotgun—in the words of Nationwide's counsel arguing to the trial court—were conclusive on the fact that appellant "had the intent to kill an officer . . . [and] had the intent to use a sawed-off shotgun in an offensive and aggressive manner." There-

after, the trial court made the following finding, which appellant's proffered but excluded evidence was intended to refute:

The record discloses that Mr. Byrd initiated the event by firing the weapon at a police officer, obviously an armed individual, and that the return fire by the officer and officers was, indeed, a natural and probable consequence of that action.

It is true, apropos of *Ross, supra,* that the issue of appellant's criminal intent could not be relitigated, and that a police officer in the line of appellant's gunfire presumably could prevail in a civil assault suit against appellant. But the issue of criminal intent is different from the question whether a reasonable person who initiates a criminal altercation must be said, as a matter of law, to foresee being injured in that situation. Moreover, if the jury had been allowed to consider whether appellant's aggression had abated by the time the police shot him, it presumably would have had room to find that his injury from police gunfire was not reasonably foreseeable, irrespective of his original criminal intent.

In summary, the injection of collateral estoppel into this case via *Ross, supra,* was an erroneous shortcut to the trial court's finding that the "return fire by the officer and other officers was, indeed, a natural and probable consequence of that action."

I would reverse and remand for trial.

---

**2.** We stated in *Dent v. Va. Mut. Benefit Life Ins. Co.,* D.C.App., 226 A.2d 166, 168 (1967):

Appellee contends, however, that to permit recovery by even an innocent beneficiary when death is the result of the insured's criminal conduct is contrary to public policy. We disagree. If insurance companies desire to avoid liability on such ground, they are free to insert a clause in their policies to that effect. Such a clause would be valid and binding. [Citation omitted.]

**3.** I therefore do not agree with my colleagues' assertion that "[t]he record does not reflect that appellant ever made a proffer at trial to

support his assertion that he ceased his attack and withdrew from his criminal venture and thereafter was shot and wounded by the police." *Ante* at 809. Counsel's complete argument on the cross-motions for directed verdict makes clear that there was only one reason why appellant had not sought—beyond the proffer quoted in the text above—to establish "[w]hether those police officers' shots were responsive and required, or whether they were otherwise," (quoting supp.rec. at 12): *id.* the trial court's prior collateral estoppel ruling precluded the argument.