490 So.2d 1275 (1986)
J.C. PENNEY LIFE INSURANCE COMPANY, Etc., Appellant,
v.
Linda J. MOSER, Appellee.
No. 85-701.
District Court of Appeal of Florida, Fifth District.
May 29, 1986.
Rehearing Denied July 7, 1986.
Ronald L. Harrop, of Gurney & Handley, P.A., Orlando, for appellant.
Thomas B. DeWolf, of DeWolf, Ward & Morris, P.A., Orlando, for appellee.
ORFINGER, Judge.
J.C. Penney Life Insurance Company (Penney) appeals from a summary final judgment awarding the proceeds of an accidental death policy, plus interest, attorney's fees and costs, to appellee Linda Moser as the beneficiary of the policy. We reverse.
Linda Moser filed a complaint against Penney seeking recovery under an accident policy insuring her late husband Philip Moser. Penney answered and alleged that Philip Moser's death, which occurred as a result of gunshot wounds received in a gun battle with police, was not "accidental" and was not covered under the terms and conditions of the policy. Both parties subsequently filed motions for summary judgment. The trial court granted Moser's motion for summary judgment and denied Penney's motion. Judgment was rendered awarding Moser the policy proceeds of $35,000, plus interest, costs and attorney's fees. The facts in this case are undisputed.
On the evening of March 14, 1983, Deputies Pittman and Mohler, uniformed officers of the Orange County Sheriff's Department, received a radio dispatch of a disturbance at the Moser residence. The deputies had been advised at a briefing earlier that day that there had been a prior domestic disturbance at that address and that handguns had been involved. When they arrived at the scene, the officers learned from another officer already there that Philip Moser, the decedent, was armed with at least two handguns and was holding a gun to his wife's head. This information was reported to the sheriff's dispatcher, *1276 and other patrol cars were sent to the residence.
Deputies Mohler and Pittman took cover in the back yard of the house so they could watch the rear door, while other officers covered the front. Within a few minutes Linda Moser came to the lighted rear entrance and looked outside. Deputy Pittman stepped out where he could be seen, identified himself and called to her. She ran to him, and crying, took refuge behind him. Almost immediately, Philip Moser followed her outside holding an automatic pistol. Deputy Mohler shined his flashlight at Philip and yelled "Deputy Sheriffs  freeze." Philip Moser raised his weapon and fired at the officers, who returned his fire. Philip then backed away from the residence towards the detached garage, firing as he went. One of his bullets struck Deputy Mohler in the leg. Subsequently, Deputy Pittman fatally wounded Philip with the third round of his shotgun.
The accident insurance policy contained these pertinent provisions:
ACCIDENTAL DEATH BENEFIT: If a Covered Member shall suffer injury and if such injury shall result directly and independently of all other causes in loss of life of such Covered Member within the first 120 days following the date of the accident, the Company will pay the Accidental Death Benefit stated in the Schedule.
* * * * * *
"Injury" wherever used in this policy means bodily injury caused by an accident occurring anywhere in the world while this policy is in force and resulting directly and independently of all other causes in loss covered by this policy.
The policy does not define "accident."
Appellee relies primarily on two cases to support her recovery here  Gulf Life Insurance Company v. Nash, 97 So.2d 4 (Fla. 1957) and Harvey v. St. Paul Western Insurance Companies, Inc., 166 So.2d 822 (Fla. 3d DCA 1964). In Nash, the insured shot and killed himself while playing Russian roulette at a party. The rationale of the decision holding the death to be accidental was that while the insured intentionally pulled the trigger, he neither intended to kill himself or even shoot himself; hence his death was accidental. Appellee strongly argues, however, that the case stands for the proposition that if an insured does not commit suicide and does not die from natural causes, his death must be accidental. True, that language is used in the opinion, but the entire context must be read to discern the real meaning of the language, and the portion of the opinion where that language appears reads as follows:
Having thus determined that the insured did not commit suicide and there being no contention that his death resulted from natural causes, it inevitably follows that his death was accidental. Synonyms of accidental are fortuitous, contingent, happening by chance, unintended, chance, undesigned. [Emphasis added].
97 So.2d at 8. We believe the statement relied on by appellee was meant to apply to the facts of that case.
In Harvey, the insured, the aggressor in a first fight, tried to take a gun away from the victim. In the struggle, the gun went off, killing the insured. Following Nash, the Harvey court held the death to be accidental. The Harvey court did not explain its reasoning, but, as in Nash, it is clear that the court determined from the facts that neither party intended or expected the gun to fire; thus as the word "accidental" was defined in Nash, the death was, "fortuitous, contingent, happening by chance, unintended, [by] chance, undesigned." Neither Nash nor Harvey fit the factual situation here. Appellee also cites Valley Forge Life Insurance Company v. Lawrence, 196 So.2d 759 (Fla. 3d DCA 1967), affirmed, 201 So.2d 449 (Fla. 1967), but that case is inapposite because it involved only an ordinary life insurance policy and not an accidental death policy. The court there held that since the policy only required proof of the insured's death and did not contain a "violation of law" exclusion, the fact that the insured's death was *1277 the direct result of his commission of a violent felony (he was killed by the victim he was attempting to rob) did not preclude recovery under the policy.
More appropriate to the issue before us is the case of Brown v. State Farm Mutual Automobile Insurance Company, 302 So.2d 445 (Fla. 1st DCA 1974). At a party in his home, Brown became inebriated and began to behave in an aggressive, violent and dangerous manner. One handgun was taken away from him. He attempted to use a shotgun but could not find any shells. He ultimately found a loaded pistol and pointed it at his brother-in-law while speaking in a threatening manner. The brother-in-law, who had not been aggressive, drew a pistol and, in defending himself against the armed assault, shot Brown. On the undisputed facts the trial court entered a summary judgment, holding that Brown's resulting total disability did not result from "accidental bodily injury" as was required by his accident insurance policy, so that no benefits were payable. In affirming, the district court held:
It is our view that insurance coverage for accidental injury is not available to an insured who sustains an injury which was the natural or probable result of his own aggressive assault upon another, reasonably foreseeable by him or by a reasonably prudent person in his position.
* * * * * *
Petitioner has cited Gulf Life Insurance Co. v. Nash, Fla., 97 So.2d 4, contending that there the Supreme Court held the rule of foreseeability not to be applicable in Florida. While the dissenting opinion of Justice E. Harris Drew (which was a majority opinion on the question of whether or not the deceased's death from a game of Russian roulette was death by accident) might lend itself to a conclusion that he intended to disown the foreseeability doctrine in all cases involving a claim of accidental death or injury, we do not believe the court intended such result under a factual situation such as that presented in the case sub judice  an injury to an insured which was the reasonably foreseeable result of his own aggressive assault upon another with a pistol. We agree with the logic of the U.S. Court of Appeals, 5th Circuit, in its opinion rejecting the contention that such is in all cases the law of Florida in Connecticut General Life Insurance Company v. Breslin, 332 F.2d 928. We have considered Harvey v. St. Paul Western Insurance Company, Fla.App.(3d), 166 So.2d 822, but are not persuaded by it that the Supreme Court has rejected the foreseeability doctrine in all accidental death or injury cases. [Emphasis in original].
Id. at 446, 447.
In Connecticut General Life Insurance Company v. Breslin, 332 F.2d 928 (5th Cir.1964), a case decided under Florida law, the beneficiary of a life insurance policy sought double indemnity benefits after her husband was killed following an altercation with his father-in-law. Double indemnity benefits were payable if the insured's death was caused by "external, violent and accidental means." In reversing a judgment for the beneficiary, the court observed that it was unwilling to assume that the holding in Nash would preclude the application of the foreseeability rule to a case in which the insured had been the aggressor in an altercation. The court reaffirmed its decision in Mullaney v. Prudential Insurance Co., 125 F.2d 900 (5th Cir.1942), in which it had held that under Florida law, when one who is the aggressor is killed in an altercation from which a fatal injury might or should be expected, the death is not to be considered accidental.
Thus we find two post-Nash decisions, both reasoning that the criticism of the foreseeability doctrine should not be extended to fact situations where the insured is the aggressor and his death or injury is the natural, expected or probable result of his aggression. Most of the courts which have addressed the same problem appear to agree that where the injury or death of the insured occurs in the course of, or as a direct result of, an assault wrongfully committed *1278 by the insured, under such circumstances as to make it appear that the harm to the insured is such a probable and reasonably foreseeable consequence of his aggression, his injury or death will not be regarded as "accidental." This is especially true where an armed insured attacks an armed police officer seeking to carry out his official duties. See Annot., 26 A.L.R.2d 399, et seq. See also Byrd v. Nationwide Mutual Insurance Company, 415 A.2d 807 (D.C.App. 1980) (shooting of insured by police officer was natural and probable consequence of insured's having fired first at obviously armed officer, so that insured's resulting injury was not "accidental," as a matter of law, within the meaning of coverage provision of disability policy).
We conclude that Brown, rather than being an anomoly as appellee suggests, correctly states the law on the issue before us. This conclusion is strengthened by the most recent definition of "accident" employed by our supreme court in Government Employees Insurance Company v. Novak, 453 So.2d 1116 (Fla. 1984), where the court said:
The word "accident" has been defined as "an event or condition occurring by chance or arising from unknown or remote causes ... an unforeseen, unplanned event or condition ... a sudden event or change occurring without intent or volition through carelessness, unawareness, ignorance, or a combination of causes and producing an unfortunate result." Webster's Third New International Dictionary 11 (1966).
The word "accident" is further defined as "a fortuitous circumstance, event, or happening ... an unusual, fortuitous, unexpected, unforeseen, or unlooked for event, happening, or occurrence ... something unforeseen, unexpected, unusual, extraordinary or phenominal [sic], taking place not according to the usual course of things or events . .. any unexpected personal injury resulting from any unlooked for mishap or occurrence." Black's Law Dictionary 30 (rev. 4th ed. 1968). More significantly, Black's Law Dictionary provides a further special definition of the word as used in accident insurance policies. "An accident within accident insurance policies is an event happening without any human agency, or if happening through such agency, an event which, under [the] circumstances, is unusual and not expected by the person to whom it happens." Id. at 31.
453 So.2d at 1118.
One who shoots at an armed police officer must know and certainly should expect that the officer will shoot back to defend himself and to subdue the aggressor, so if the aggressor is wounded or killed by the return fire it cannot be said that the result occurred by chance, fortuitously, or that it was an unforeseen or unplanned event occurring without intent or volition. Under these circumstances, injury or death of the attacker is predictable and is not an "event which, under [the] circumstances is unusual and not expected by the person to whom it happens." Black's Law Dictionary 14 (rev. 5th ed. 1979). It is, therefore, not an "accident," but is an occurrence deliberately provoked by the insured, thus intentionally, rather than accidentally, caused.
Because the facts are undisputed and the only issue here is whether the correct legal principles were applied, summary judgment was appropriate, but it should have been entered for the insurer. The final judgment is reversed, and the cause is remanded for entry of judgment for appellant.
REVERSED and REMANDED.
COBB, C.J., and COWART, J., concur.